WITHEY *v.* PERE MARQUETTE RAILROAD CO.[1]

1. CARRIERS—INFANTS—BAGGAGE—LOSS—LIABILITY TO PARENT.

A father, paying full fare for himself, traveling with an infant of such tender years that by custom no fare is demanded for its carriage, may recover upon the contract of carriage, for the loss or injury of articles bought and used for the child, which articles are a part of the father's baggage.

2. SAME—WIFE'S JEWELRY.

Where a husband buys railroad tickets for himself and wife, and has their baggage checked thereon, the contract of carriage is with him as to both of them, and he can recover thereon for the loss or injury of articles of jewelry belonging to her, which were not given or furnished by him.

[1] Rehearing denied November 6, 1905.

3. EVIDENCE—OPINIONS—VALUE—EXPERTS.
    In an action against a carrier for injury to baggage, witnesses who have inspected various articles of wearing apparel claimed to have been injured, may, after describing the injuries, state the amount, which, in their opinion, such articles are depreciated in value by the injuries.

4. TRIAL—INJURY TO CHATTELS—INSPECTION BY JURY.
    Refusal of the court to require production before the jury of articles of wearing apparel claimed to have been injured by defendant, *held*, not an abuse of discretion, defendant's witnesses having been given full opportunity to inspect them before trial.

Error to Kent; Perkins, J. Submitted January 10, 1905. (Docket No. 29.) Decided September 28, 1905.

Assumpsit by Charles S. Withey against the Pere Marquette Railroad Company for breach of contract of carriage. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Frederick W. Stevens* (*Charles McPherson*, of counsel), for appellant.

*Crane & Norris*, for appellee.

OSTRANDER, J. On Saturday, December 26, 1903, plaintiff, his wife, and their 21 months' old child were passengers on defendant's road from Monroe, where they had passed Christmas with relatives, to Grand Rapids, their home. As baggage they had on the same train two trunks. These trunks contained various articles of dress and of the toilet; some intended solely for the use of the infant. They contained, also, some articles of jewelry used by and intended for use by the wife, which had been given her by others than her husband, which she took to Monroe with her on her visit, and some gifts made to plaintiff and his wife and to the child at Monroe.

Plaintiff purchased at Monroe two full fare tickets to Grand Rapids, no ticket for the infant, checked the trunks, and received the checks issued for them. At East Paris,

near Grand Rapids, the train in question was in collision with an east-bound passenger train. On the following Monday the baggage was delivered at plaintiff's place of residence, and later, at defendant's freight depot, plaintiff's wife picked out from a quantity of goods certain articles which had been in the trunks. As delivered, the trunks, which were broken, contained a portion only of their original contents, and also articles, some of them greasy, not belonging to plaintiff or his wife, coal, and pieces of earth or mud. The contents of the trunks were mussed, and some of them stained and greased and spotted with mud. In January, 1904, a claim, which reads: " I herewith present my claim for damages sustained by Mrs. Withey and myself in your wreck of December 26, amounting to $386.25"—with a list of articles and figures, was presented to defendant, and later plaintiff began this suit.

The action is assumpsit. Liability of defendant is predicated upon the contract of carriage, the nonperformance of the contract by defendant, and the injury of the baggage. No contention was made in the court below respecting the negligence of the defendant and resulting liability to pay plaintiff the damages he sustained.

The case comes here upon 25 assignments of error, which may be grouped, and which counsel for defendant has grouped and discussed, under four propositions. Stating these propositions as they are understood, and in the order in which they will be discussed, they are: (1) That plaintiff was not entitled to recover (as he did) for destruction of and damages to articles intended for the sole use of the infant; (2) that he was not entitled to recover (as he did) for loss of and damages to the articles of jewelry belonging to his wife; (3) that the court improperly admitted opinion evidence as to the amount or sum of the damage to particular articles; and (4) that the court should have required, upon defendant's application, production of the damaged articles, so far as they could be produced, for exhibition to the jury.

1. It is contended that, because no fare was paid for the infant—because it was carried free—the defendant "was a gratuitous bailee as to the baby, and the transportation as baggage of articles intended solely for its use was a mere incident to that gratuity," and the case of *Flint & Pere Marquette R. Co.* v. *Weir*, 37 Mich. 111, is relied upon to sustain the contention. In that case the form of action was, as it is here, assumpsit. The plaintiff, on a passage from Detroit to Saginaw upon defendant's road, lost, as he claimed, his trunk, containing personal effects. It appeared that both plaintiff and his trunk were being carried, not for hire, but gratuitously. It was held that, in the absence of a contract for carriage, damages for loss of the baggage could not be recovered in assumpsit. The rule in the case cited does not control the present case. Even if it can be said that the child was carried free, a point which we do not consider, it by no means follows that the articles in question, the child's wearing apparel, were carried free. The clothing of the infant was the property of the father, and was in the trunks of the father, with whom the defendant had made a contract of carriage, both of his person and his baggage.

While it is asserted on the part of defendant that it had the right to charge for the carriage of the infant, it is not claimed that under its rules and practice it does charge anything for the carriage of infants of the age of plaintiff's child. Nor do we base our determination at all upon the fact, which appears in the record, that the infant occupied for hire a seat in the parlor car during the trip. What we hold, and what we think the correct rule of law, is that a father, paying full fare for himself, traveling with an infant child of such tender years that by custom no fare is demanded for its carriage, may recover upon the contract for carriage for the loss or injury of articles bought and used for the child, which articles are a part of, and packed and carried with, his baggage, and upon the ground that such articles are the property of the par-

ent, in his possession, and properly a part of his proper baggage. *Prentice* v. *Decker*, 49 Barb. (N. Y.) 21; *Burke* v. *Railroad Co.*, 7 Heisk. (Tenn.) 451; *Wheeler* v. *Railroad Co.*, 31 Kan. 640; *Smith* v. *Abair*, 87 Mich. 62, 63.

2. We have before us no question concerning the right of the husband (plaintiff) to recover for injuries to the ordinary wearing apparel of his wife. The contention relates entirely to articles of jewelry, lost or injured, which were not given or furnished by her husband. It is defendant's position that, these being the separate and sole property of the wife, the husband, under the circumstances shown, could not recover for their loss or injury. In his charge the court said to the jury:

"Some question has been raised by defendant's counsel to the effect that the articles contained in this trunk which had been previously given to the plaintiff's wife by others, and which were taken by her to Monroe on this trip as a part of her wardrobe, ought not to be included in your consideration. These articles are the cameo pin set in pearls, the silk liberty scarf, the set of gold beads, the emerald wreath set in pearls, and perhaps some other articles.

"But after some consideration (although not without considerable hesitation) I have concluded, under the circumstances admitted in this case, to submit that question to you in relation to these articles thus enumerated. I feel somewhat certain that the husband had such special property in these articles by reason of his possession that he would be entitled to recover their value, if lost, notwithstanding they were the special property of the wife.

"I therefore instruct you as to these articles, which were the wife's property,  *  *  *  and which you believe, under the evidence, were either lost or damaged, shall be taken into consideration by you in fixing the amount of damages sustained by the plaintiff.  *  *  * "

Error is assigned upon this portion of the charge, and is also assigned upon the refusal of the court to give defendant's eleventh request to charge, which was:

"The plaintiff is not entitled to recover for the loss of

or damage to any article belonging to his wife which had not been purchased with funds furnished by the plaintiff."

Of this request it is said by counsel for plaintiff that—

"The defendant contends that in no case can any recovery be had, unless the plaintiff establishes an absolute title to the articles, notwithstanding that the plaintiff was the bailor and the defendant was the bailee, and undertook with the plaintiff to carry the trunks safely."

We do not so understand the position of counsel for defendant. No one will contend that in all cases a bailor must show absolute title to the thing bailed in order to maintain an action against the bailee for injury to the subject of the bailment. The question in this case is whether, under the circumstances shown, plaintiff, with respect to the particular chattels, had the interest necessary to enable him to maintain this action. I have been of opinion that upon the facts and the declaration, which avers a contract between the parties to transport plaintiff's baggage, of which baggage the articles in question are averred to have been a portion, it must be held that the plaintiff cannot recover the value of the particular property of the wife. My Brethren who sat in the case are agreed, and there is reason and authority to sustain them, that the verdict and judgment are right, and that the recovery may be and should be sustained upon the ground that the contract to carry plaintiff and his wife and their common baggage was a contract with the plaintiff. *Jacksonville, etc., R. Co.* v. *Mitchell,* 32 Fla. 77 (21 L. R. A. 487); *Baltimore Steam Packet Co.* v. *Smith,* 23 Md. 402. Analogous decisions are those in *Blanchard* v. *Page,* 8 Gray (Mass.), 281; *Moran* v. *Packet Co.,* 35 Me. 55. See, also, Hutchinson on Carriers, § 724. It is not claimed that the articles in question were not proper baggage for the wife. In a sense, the question presented is one of general commercial law, in view of which I yield my own opinion to that of the majority.

3. It is necessary, in considering this proposition, for a

141 MICH.—27.

better understanding, to make further reference to the record. The plaintiff, his wife, and others were sworn as witnesses for the plaintiff. Each of them had made some examination of the articles about which they gave testimony. Excepting plaintiff's wife, each was permitted, over objection, to estimate in dollars the amount of the injury described by them, or to state the injury in fractions of the value before injury, as that the damage was one-fourth or one-half of the original value of the articles, or that for the purpose for which they were purchased they had no value. The witnesses Smith, Schwartz, Remington, and Berry, called by plaintiff, were treated by counsel as expert witnesses, and each gave answers to hypothetical questions. It is evident that, whether included in the hypothetical question or not, and it usually was, the answer of each witness as to amount of damage was based in part upon a personal inspection of the injured article. A witness with 25 years' experience in dry goods was asked by plaintiff's counsel:

" *Q.* Assuming that that gown was made late in the fall of 1903 by Miss Remington, cost $85 when delivered, and was worn the second time, that it had been through a railroad collision, been to the cleaner's, and left after cleaning in the shape it is now, state what in your opinion would be the value of that gown in the present condition for Mrs. Withey's use and wear.

"*A.* The gown having been injured, the purpose for which it was made is absolutely destroyed. A gown which is made for a dressy dress, to be worn as a dress for dress occasions, when it has become soiled or spotted or injured so that it shows, its value for that is lost entirely; and it is not a gown that is adapted for ordinary uses. She did not buy it for a house dress or street dress. Its value is gone. * * * I should not consider it had any money value for the purposes for which it was made. It has lost it by its damage."

Another witness, the dressmaker who made the gown, testified that in her opinion it was damaged one-half, or $42.50. These examples acquaint us fairly with the grounds of the exceptions taken. As to two rather ex-

pensive dresses, an opera cloak, and the overcoat of the plaintiff, the injuries complained about were principally to the appearance of the garments, rather than injuries to the fabrics. Each witness had some knowledge, gained from observation, which the jury had not and could not have, except by seeing the injured property, although the witnesses attempted to describe conditions as they saw them.

Counsel for appellant contends that, whatever experience these witnesses may have had in their respective lines, and however competent they may have been to state cost and quality and to describe the injury, it was not competent to state to the jury an opinion of the amount of the damage expressed in dollars. It is a rule of the law of evidence that upon the question of the existence or non-existence of a fact in issue, whether a main fact or an evidentiary fact, the opinion of witnesses is not admissible. What a witness has seen or heard or felt, he knows, and it is for him to put before the jury the facts as he has perceived them by his senses, and for the jury to form an opinion concerning the fact in proof of which the evidence is offered. But there are exceptions, apparent or real, to the rule which excludes opinion evidence. A real exception is that class of opinion evidence which is called ' expert evidence.' The apparent exceptions are not easily classified. They are sometimes treated as opinions admitted under exceptions to the rule, sometimes as matters of fact. The practical test for receiving or rejecting opinions of lay witnesses seems to be that, when the jury can be put into a position of equal vantage with the witness for drawing them—when by the mere words and gestures of the witness the data he has observed can be so represented that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion —he may not as a rule give an opinion or estimate. 3 Wigmore on Evidence, § 1924.

It was said by Justice CAMPBELL, in *Evans* v. *People*, 12 Mich. 27, 35:

" Experience has shown that many cases exist in which it is impossible, by any description, however graphic, to explain things so as to enable any one but the witness himself to see or comprehend them as they would have been seen or comprehended, could the jury have occupied his position of observation. In such cases the witness must give his own impressions and conclusions, or his narrative is useless, adding, however, as full explanations as the nature of the case will admit, so that his capacity and truthfulness may be tested as far as practicable."

In this State, testimony concerning the amount of damage, largely matter of opinion, has been held properly received in cases not to be distinguished in principle from the one at bar. *Continental Ins. Co.* v. *Horton*, 28 Mich. 173; *Printz* v. *People*, 42 Mich. 144; *Enright* v. *Hartsig*, 46 Mich. 469.

In *City of Grand Rapids* v. *Railroad Co.*, 58 Mich. 641, cited and relied upon by plaintiff in error, the evidence held to have been wrongly admitted was not opinion as to value of premises merely, but opinion or judgment as to compensation to be awarded for taking premises in condemnation proceedings.

The court carefully instructed the jury. He said in part:

" Several witnesses have been permitted to testify as to their opinions as to value both before and after the alleged injuries to these articles. But I instruct you that you are to assess the plaintiff's damages according to your own best judgment of the evidence and as to the injury done to them; and the evidence that has been thus received may be followed or not, as you find that it is true or not, under the evidence as to the amount of damages the plaintiff has actually sustained.

" If you believe from the evidence in the case that the statements and estimates made by any witness are not warranted, you need not follow such statements. If you believe that they are warranted, you may, to the extent that you find they are warranted by the evidence. In other words, the whole question of the amount of damages sustained by the plaintiff is for you to determine, and you alone, from the evidence, and you are not to be governed

or concluded by the opinions of any one else, unless you believe such opinions to be well founded and based upon the evidence in the case."

4. A subpœna, requiring in terms that plaintiff and his wife produce in court such of the damaged articles as were in their possession, was taken out on the part of defendant, and with a witness fee and an additional fee was served upon both the plaintiff and his wife. The record discloses that a considerable amount of the most expensive clothing could have been, without evident inconvenience, so produced, including plaintiff's overcoat, and the opera cloak and two dresses belonging to his wife, the value of which it was claimed had been diminished $127.50 by stains, marks, and other injuries to the appearance of the garments received in the collision. None of the clothing was produced, and, upon the motion of defendant's counsel to compel its production, counsel for plaintiff announced that it would not be produced. At different times during the trial the following, with other similar, language was used by the court:

"At present I think it is a matter in the discretion of the court to require it, and, being a discretionary matter, I do not feel like exercising it against the wish of the party to bring personal chattels into court for exhibition to the jury. * * * I do not think it is within the province of the court, as I have already said, to compel the production of such evidence. * * * If the party does not care to produce these articles, but chooses rather to have oral testimony as to their condition received, instead of the articles themselves, I think it is a matter that rests with the party and not with the court."

And in the charge to the jury it was said:

"Something has been said about the refusal of the plaintiff to produce before you the articles alleged to have been injured or damaged. I think, perhaps, I ought to say something about that to you in these instructions. I have already said in your presence that to produce the articles or not produce them was a privilege belonging to the plaintiff, and to him alone, concerning which the court under the circumstances had no right to interfere.

Yet, if it should appear to you by the evidence that it would be practicable to produce those articles in court, the fact that there was a refusal to produce them is a matter you may consider as bearing upon the credibility of the witnesses."

These rulings and this instruction are before us for review. We shall assume that the learned trial judge did not mean to be understood as denying the power of the court to order the production of the garments. *Graves* v. *City of Battle Creek*, 95 Mich. 266 (19 L. R. A. 641). Treating the rulings made as an exercise of judicial discretion, we are not impressed that the discretion was abused. The witnesses for defendant were permitted before the trial inspection of the principal articles of apparel claimed to have been injured, and we do not think it is clear that the inspection which the jury might have made, if the garments had been produced in court, would have aided them.

Judgment is affirmed.

Moore, C. J., and Carpenter, Montgomery, and Hooker, JJ., concurred.