H. J. REEDY CO. *v.* CAMERON.

1. EVIDENCE — SALES — RECOUPMENT FOR BREACH OF WARRANTY.
    In an action for the price of an elevator and motor furnished to defendants who claimed that it did not operate properly, and was worn and old, plaintiff claiming that the motor was new and that if it failed to work the fault lay in improper operation, an expert witness' opinion that it was properly operated by defendants' servants was material.

2. SAME—EXPERT AND OPINION TESTIMONY—ELECTRICAL MACHINERY.
    An electrician of experience, who had seen the electric motor operated in connection with an elevator to which it furnished power, at twenty or thirty different times, was qualified to express an opinion as to whether it was properly operated.

3. SAME—OPINION TESTIMONY—WITNESSES—APPEAL AND ERROR.
    It was error to exclude from the consideration of the jury, an answer of defendants' expert that the motor was old, worn-out and second-hand, and the error was not cured by the fact that similar testimony of the witness appeared in another part of the record, since the action of the court might have been intended to apply to the other evidence.

4. SALES—WARRANTY—DEFECTIVE MACHINERY.
    Evidence of defendants, in an action for the purchase price of an elevator and electric motor, that frequent repairs were required, that the motor was old and often failed to work, that the parts were worn, and that its insulation was imperfect, presented a sufficient showing to raise an issue of fact as to the breach of a warranty of material and workmanship.

5. EVIDENCE—IMPEACHMENT OF WITNESS.
    Letters tending to contradict the testimony of plaintiff's president, that the motor was new, first-class and the plaintiff had never been called upon to make repairs, should not have been excluded.

6. DAMAGES—VALUE—EVIDENCE—CHARGE TO JURY.
    Although defendants' witnesses testified that a motor furnished under a contract with plaintiff was defective and worthless, and there was no evidence of value except the

value as claimed by plaintiff's witnesses, and the fact that defendant made use of and retained the motor, the trial judge erred in charging the jury as to defendants' claim of recoupment that they must, under the evidence, find it was worthless, or of the value shown by plaintiff's testimony.

Error to Ingham; Wiest, J. Submitted April 8, 1910. ( Docket No. 49.) Decided December 22, 1910.

Assumpsit by the H. J. Reedy Company, an Ohio corporation, against Basil C. Cameron and Frank N. Arbaugh, on a contract for the sale and installment of an elevator. A judgment for plaintiff is reviewed by defendants on writ of error. Reversed.

*Gardner & Hood,* for appellants.

*Raudabaugh & Person,* for appellee.

McALVAY, J. Plaintiff recovered a judgment against defendants in an action of assumpsit for a balance claimed to be due under a written contract entered into between the parties, whereby plaintiff agreed to furnish, erect, and install for defendants an electric passenger and freight elevator in the building in the city of Lansing occupied by defendants in their business of conducting a department store, for a consideration of $2,000, to be paid, one-third upon arrival of material, one-third upon completion, and one-third 30 days after completion and acceptance.

There is no dispute about the terms of the contract, nor that there remains a balance unpaid of $153.83. The dispute in the case arises on the claim of defendants, under their notice given with the plea, that although plaintiff agreed and guaranteed every part of this electric elevator in all its parts to be of first-class material, and erected in a workmanlike manner, and that its lifting capacity should be 2,000 pounds, yet the electric motor was not new or of first-class material when installed, nor the work or installation as agreed; but that the motor was second-hand and

worthless, and that the lifting capacity of the elevator was about 1,000 to 1,500 pounds, and that from the time it was put in it was, without fault of defendants, out of commission much of the time to the damage of defendants. This notice raised the issue which was tried in the case. Defendants upon the trial offered proof tending to show that this elevator, by reason of being operated by a second-hand electric motor, was not installed according to the contract and was frequently out of commission, sometimes for several days, requiring the employment of electricians to make repairs at large expense. Plaintiff claimed that this motor was new and first-class in every respect, and the trouble was caused by the careless and ignorant operation of the elevator by defendants' employés.

The case turns upon the quality and condition of the motor furnished by plaintiff at the time of its installation.

Defendants have brought the case here for review, asking for a reversal on account of errors committed during the trial.

We will first consider assignments of error relative to the admission or exclusion of evidence. The record shows that defendants' witness, Cable, an electrician, saw this elevator in operation at least two or three dozen times, and had examined the motor when it was being repaired. Several errors are claimed to have been made in excluding his testimony. On examination, we find that this testimony relative to the kind of motor this was, its condition, and his opinion that it was second-hand was finally admitted. He had qualified sufficiently to give his opinion upon that question. He was asked later:

"From the way you saw the machine operated the different times you were there, and what you saw of the machine or motor, and the elevator, what could you say as to whether it was or was not properly operated?"

The witness was not allowed to answer.

This elevator was operated by the power generated by the motor in question. The witness was an electrician. The question was directed to the method of operating this

motor. The power was controlled by the man who ran the elevator, and whether it was properly applied and cut off was a material question in the case. The witness should have been allowed to answer the question. Plaintiff contended that the reason that the elevator did not work was because of careless operating by ignorant employés. An expert, who had observed this operation of an electric motor three dozen times, was qualified to give an opinion as to whether it was done carefully or otherwise, and the testimony was material in view of the cross-examination which had just preceded it. The court was in error in excluding this testimony.

The error relied upon relative to striking out an answer by defendants' expert witness, Slaughter, where he says: "It was an old, worn-out, second-hand motor," requires consideration. The testimony of this witness was taken by deposition. The record shows that the part in which the above sentence occurs was re-offered after part of the deposition had been read. This witness was thoroughly acquainted with this motor, having repaired it five or six times. He gave in detail the condition of the motor, explaining what its defects were, what conditions he found in it which showed defective insulation, and old defects covered with plaster of paris, paint, and varnish. What the original objection was, or the reason for striking out the above sentence, does not appear. It is argued that it could not be prejudicial, because a like statement appeared earlier, without objection, in his deposition. From this record, we cannot say that in striking out this answer, it was not intended to strike out the other. If the court was correct, that would follow logically. A fair inference is that it was so intended. Even if it were not, it was a material and proper part of the answer to a question relative to the judgment of witness upon the value of the motor furnished. It was error to strike it out.

In this case, plaintiff admits that defendants were entitled to show: (*a*) the defect or defects, if any; (*b*) the

occasions and length of time when the elevator was out of repair; (c) the repairs necessary to put it in running order, and insists that the first proposition was not proved.

The testimony of the expert witnesses above discussed tended to prove the first of these contentions, and tended to show that these defects existed at the time of the installation of the elevator. There was sufficient warrant for its submission to the jury. Such facts could be shown by the necessity for repairs to the motor soon after it was installed, the condition of its parts when they were removed, and the frequency of repairs required, based upon the condition of the motor. No expert on the part of defendants examined this motor when it was put in, and the claimed defects were latent.

Some letters, written by plaintiff to its installing agent, were offered by defendants and excluded. There were other letters offered which had been written to plaintiff by the manufacturer of this electric motor in answer to letters written to it by plaintiff. These last-mentioned letters having been properly demanded were not produced. All of these letters were first referred to and identified by Mr. Reedy, president of plaintiff company, on his cross-examination. He had testified that the motor was new and first-class; that they had never been called upon to make any repairs, and as far as he personally knew, the elevator had not been out of repair since its installation. On cross-examination, he admitted that bills for repairs to the amount of about $80 or $100 had been sent to plaintiff by defendants, and allowed.

In Exhibit E was the statement:

"Also have him accept the elevator; we do not want any come-backs."

In Exhibit H was the following postscript:

"Be sure to get letter of acceptance of elevator before you leave."

In Exhibit F appears:

"And if they do not sign it [meaning letter of accept-

ance], take part of their machine apart so they cannot run it, and until they pay you the balance, keep the elevator shut down."

Exhibit G is the blank acceptance referred to.

All of the electric company's letters were offered to show that plaintiff had knowledge of repairs made on the motor, of claims that it was a second-hand motor, and that plaintiff was contemplating sending a man from the electric company to Lansing to examine or repair it. These letters were admissible for purposes of cross-examination of the witness Reedy, as bearing upon his credibility or to rebut his statements above given. It was error to exclude them.

Errors are assigned upon certain portions of the charge, wherein the court said:

" If the motor was not worthless, then it was of the value of $387, because there is no evidence showing any value between $387 and nothing."

The substance of this charge was repeated several times. The court also charged:

" There is no middle ground. If you are not able to say from the evidence in this case that the motor was worthless, then you come to the other evidence in the case relating to its value as given by the plaintiff."

The court was in error in so charging the jury. Although it is true that no witness on the part of defendants gave the value of the motor at the time it was installed, in dollars and cents, and one or two witnesses testified that it was worthless at the time the repairs were made, the value of the motor at its installation was, under all the evidence, a question of fact for the jury. It had been retained and used by defendants. All of the testimony as to its condition and the claimed necessity for the repairs made upon it was before the jury. The court had already charged them correctly and repeatedly that if the motor was second-hand, yet defendants, by keeping it, must pay what it was worth at the time of installation. The error

consisted, as above shown, in later restricting the jury to a finding of the full value, as claimed by plaintiff, or of no value at all, taking from them the right to find from this record its actual value.

Other claimed errors do not require discussion.

The judgment is reversed, and a new trial granted.

MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.