EESLEY LIGHT & POWER CO. *v.* COMMONWEALTH POWER CO.

1. EVIDENCE—CORPORATIONS—EFFECT OF ADMISSION UPON RIGHT TO SHOW INCORPORATION—CERTIFIED COPY OF ARTICLES.

Upon the trial of an action for damages against a nonresident corporation charged with injuring plaintiff's power rights, the plaintiff was not precluded by defendant's admission that it was incorporated from offering in evidence a certified copy of its articles of incorporation, admissible in evidence in pursuance of the provisions of 3 Comp. Laws, § 10169: a party is not obliged to accept his adversary's admission in lieu of record evidence unless he chooses.

2. SAME — HEARSAY — DEATH OF WITNESS — FORMER TESTIMONY—CROSS-EXAMINATION.

Testimony of a deceased witness in another suit relating to the

condition of the water power and river in the past was properly excluded by the court upon the objection of plaintiff who was not a party to the first cause or successor in interest of either party thereto, no showing being made that the issues in both cases were substantially identical.

3. SAME—OPINIONS—EXPERT TESTIMONY—QUANTITY.

The opinion or conclusion of a witness, who was in a position to know the facts, that three-fourths of the coal used by plaintiff during a given period in producing steam power was required because of interference with plaintiff's water power on defendant's part, was properly admitted in evidence by the trial court and the qualification of the witness to give testimony as an expert was sufficiently shown on cross-examination so as to obviate any possible error committed by plaintiff's alleged failure to lay a proper foundation.

4. SAME—CONDITIONS SUBSEQUENT TO SUIT.

Any error that may have been committed in permitting a witness to testify to conditions prevailing after suit was commenced was rendered harmless by the fact, as shown by the record, that the subject was first introduced on cross-examination by counsel for appellant.

5. WATERS AND WATERCOURSES—CHARGE—DAM.

It was not misleading for the court to charge, in an action for damages caused by ice gorges and water backing upon plaintiff's power plant, resulting as it claimed from defendant's negligent failure to allow slush and anchor ice to pass its dam, that the jury might consider all items of expense that plaintiff was put to for extra labor and fuel while its water power was affected, considered with other portions of the charge limiting the damages to expenditures traceable to ice gorges resulting from defendant's negligence, and instructing the jury that the defendant could only be held liable for damage done by backwater caused by defendant, not by other natural causes.

6. SAME—NEW TRIAL.

On error, the court will not reverse the discretion of the trial court who denied defendant a new trial when the verdict was sustained by the evidence and was not overwhelmingly contrary to the great weight thereof.

Error to Allegan; Padgham, J. Submitted June 19, 1912. (Docket No. 97.) Decided October 1, 1912.

Case by the Eesley Light & Power Company against the Commonwealth Power Company for negligent interference with plaintiff's water rights. Judgment for plaintiff. Defendant brings error. Affirmed.

*W. S. Westerman* and *C. R. Wilkes*, for appellant.

*Ed. J. Anderson*, for appellee.

STONE, J. The plaintiff is a domestic corporation engaged in the generating and sale of electricity at Plainwell, Mich. It was admitted upon the trial that plaintiff since 1905 has been the owner of 2,266⅔ square inches of water at the plaintiff's tailrace, and had the right to use this water during the years from 1905 to May, 1910, the time of bringing this suit. It depends for the most part upon water power from the river to generate its electricity. Plaintiff has a steam plant to supplement the water power, when it is needed for any reason, and this steam plant is of sufficient capacity to supply the power necessary to produce the electricity required by the plaintiff. The plaintiff has a head of nine to ten feet under normal conditions.

The defendant corporation is organized under the laws of the State of Maine, and it has owned and operated a dam about a mile and a half below the plaintiff's plant since 1905, the dam having been built in 1902 by another corporation which transferred it to the defendant. The dam of the defendant carries about 13½ feet head. It is also engaged in producing electricity and the sale thereof.

The claim of the plaintiff is that in the winter time, from December, 1905, to the time of the commencement of this suit, the slush ice and anchor ice came down the river below the plaintiff's plant and lodged in the pond of the defendant, and was, at times, when the pond was frozen over, stopped by this ice at the upper end of the pond, and that the defendant neglected and failed to keep an open channel through its pond, and neglected to permit the slush and anchor ice to pass down the river, as it

would have done if the dam and pond had not been there; and it claims that as a result the ice formed gorges across the river at the upper end of the defendant's pond, and set back the water of the river against the wheels at the plaintiff's water power, so as to materially affect the power of the plaintiff, and so that the plaintiff had to use its steam plant, and burn coal for power. There is no claim for damages except for coal burned and the cost and expense of extra help required at such times, as it had to maintain its power by the use of its engine, while there was backwater in the winter time, resulting from the damming up by ice that would not have dammed up, if defendant's dam and pond had not been in existence, or if it had done its duty in the premises. The defendant claimed that the history of the river showed that ice jams and ice gorges had always formed in the winter time before its dam was built, and that this backwater was the result of natural conditions, and was not caused by defendant's dam and pond.

It appears that there were two question for the jury: *First,* whether defendant was in fault for the backwater complained of; and, if so, *second,* how much coal plaintiff was obliged to burn, and how much extra labor furnish, to supply power, because of the acts of the defendant. The jury returned a verdict for the plaintiff of $900, and a judgment followed. The defendant has brought error.

The assignments of error grow out of the admission and rejection of evidence, the charge of the court, and the refusal of the court to grant a new trial on the motion of the defendant. Before discussing the assignments of error, counsel for appellants urge that there was no evidence offered in the case tending to show the amount of damages that the plaintiff had sustained, except the testimony of John F. Eesley, president and manager of the plaintiff corporation, and Judd O. Pratt, the engineer who ran the steam plant; that Mr. Eesley's testimony shows that in the winter of 1905–06 plaintiff expended:

For coal and extra labor .................................. $227 44
"    "    "    "    " 1906–7 ...................... 300 91
"    "    "    "    " 1907–8 ...................... 265 65
"    "    "    "    " 1908–9 ...................... 325 49
"    "    "    "    " 1909–10 ..................... 310 14

Making a total sum as claimed of ...........$1,429 63

The testimony of this witness also shows that he was paid by the lessee of the Eesley Milling Company toward the cost of the coal $130.70, so that the total cost of the coal and extra labor from 1905 to 1910, after deducting the last-named sum, was $1,298.93; that the plaintiff did not claim that defendant was responsible for all of the coal burned. It was admitted that part of the coal would have been burned, whether defendant's dam had been there or not; and it is claimed by the defendant that the principal error in the trial was in admitting testimony on the question of how much of this coal should be charged to the defendant, and it is further claimed that the undisputed testimony—*i. e.*, the testimony of Mr. Eesley and Mr. Pratt—clearly shows that the verdict was excessive. It will be seen that the jury gave the plaintiff a verdict for nearly three-fourths of the total amount of coal and extra labor used by the plaintiff during those five years after deducting the $130.70; and the defendant's contention is that this evidence shows that even if the jury discredited all of the testimony of the defendant as to the history of the river, and accepted the testimony on the part of the plaintiff upon that subject, then the verdict was at least double what the evidence justified.

1. We shall consider the first nine assignments of error under the heads as they are discussed by appellant.

(*a*) Assignment of error No. 1. The court permitted counsel for plaintiff to read before the jury a certified copy of the articles of incorporation of the defendant, against the objection and exception of the defendant. It is the claim of the appellant that, it having admitted its incorporation and that it was lawfully doing business in this State, it was error to permit the reading of the arti-

cles in evidence, and that the effect was to prejudice the jury.   We cannot agree with this contention.   The statute (section 10169, 3 Comp. Laws) makes a duly certified copy of the articles admissible in evidence.   The language of this court in *John Hancock Mutual Life Ins. Co. v. Moore*, 34 Mich. 41, is applicable here:

"A party can never be compelled to accept his adversary's admission in lieu of record evidence, unless he chooses."

See, also, the following cases: *Kimball & Austin Manfg. Co. v. Vroman*, 35 Mich. 310-321 (24 Am. Rep. 558); *Baumier v. Antiau*, 79 Mich. 509-515 (44 N. W. 939); *In re Miller's Estate*. 160 Mich. 309-312 (125 N. W. 2).

(b) The seventh assignment of error raises the question of the right to introduce the testimony of Alford Whitcomb, a deceased witness, taken in the case of *Michigan Paper Co. v. Kalamazoo Valley Electric Co.*, relating to the history of the Kalamazoo river prior to the building of defendant's dam.   The admission of this evidence was refused by the trial court.   It is said by appellant that that suit was between parties only one of whom stood in privity of relation to the parties in the instant suit. Counsel concede that the general rule only admits such evidence when the testimony is between the same parties, or those who stand in privity of relation with them.   1 Greenleaf on Evidence, § 164, and cases cited.   *Mason v. Kellogg*, 38 Mich. 132.   This plaintiff had nothing to do with that case, and had no opportunity to cross-examine the witness.   It further appeared that the attorney who represented the defendant in the instant case represented the plaintiff in the former case, and the counsel for plaintiff in the instant case had nothing to do with that case.   Counsel for appellant rely upon the rule stated in 2 Wigmore on Evidence, at section 1388, where that author says:

"The principle, then, is that where the interest of the per-

son was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end.    Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to indentity of issue.    It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party opponent in that case had the same interest and motive in his cross-examination that the present opponent has; and the determination of this ought to be left entirely to the trial judge."

We are of opinion that the trial court did not err in its ruling.    It appears that the former suit was not between the same parties or their representatives in interest.    It does not appear that the issue or subject-matter was the same, and this is essential to the admissibility of the testimony.    2 Wigmore on Evidence, §§ 1386, 1387, 1388. At the close of the quotation cited by appellant, Wigmore says:

" Nevertheless, the courts have not, in name at least, often gone so far as to accept so broad a principle."

See 16 Cyc. p. 1088 et seq.

(c) The second, third, fourth, and fifth assignments of error may be considered together.    It is the contention of the appellant that there was a prejudicial error in permitting the witness Eesley to testify that he "used in the year 1905–06 about three-fourths of what the coal cost," viz., of the $202.44 on " account of this high water and ice."    The record discloses that the testimony of this witness, before the above evidence was received, had been extended and full, and covers more than 15 pages of the printed record, in which he had gone into the particulars of his observations and examinations relating to the subject.    The objection of counsel was as follows:

" I will make an objection to that manner of proving damages, and move to strike it out as incompetent.    The witness kept a record of the time, shown by his own testimony, when he claimed the water was set back, and gives the times.    It is not for him to generalize and speculate

on what proportion of the entire cost of running his plant came from what he says is ice and backwater. He cannot guess at it. I move to strike out his testimony, so far where he says about three-quarters. It is, of course, eventually for the jury, but it is for this witness to tell what he knows, and it is for them to say whether it is about three-quarters or not. If he can tell how much coal he burned in the different days he says he was shut down, I don't object to that at all. He is giving dates and times. It is all guesswork the rest of it. We object to his guessing."

To this plaintiff's counsel replied as follows:

" We claim the witness has got a right to give his best judgment from his own knowledge, not from any hypothetical question, but from his own knowledge, of how much more he used on account of the backwater that prevented his using the water wheels, and he is in a situation to give a judgment to the jury. His coal cost during that time, that winter, so much money. Now, he has got some kind of an idea as to how much of that coal he had to use on account of running while this high water interfered with him."

The witness further testified, before the court ruled on the objection, that he did not keep a record of just how much coal he burned each day when he was troubled with the backwater. There was a lengthy discussion by counsel, followed by a ruling to let the testimony stand, as bearing upon the measure of damages. It is urged by counsel for appellant that this was permitting the witness to give opinion evidence upon the subject. It appeared in evidence that the plaintiff had some trouble with ice in its race, and that some of the coal was used because of that difficulty, a condition that the defendant was not responsible for; and the question is whether it was competent to allow the witness to give his judgment or estimate of what portion of the trouble and expense was caused by the ice in the race, and what portion was caused by the setting back of the water from below by defendant.

Counsel spend the greater portion of their argument upon this question, and cite authority bearing more or less

upon the subject. The evidence shows that no complete records were kept as to the dates, and length of time when plaintiff was obliged to use coal, nor whether the coal was used on a particular occasion by reason of the trouble from the race, or from below. The record discloses the testimony of at least 18 witnesses upon the subject, giving to a greater or less extent the setting back of the water from below, and the extent of the trouble from the race. We cannot agree with counsel for appellant that the witnesses Eesley and Pratt were the only witnesses who gave any evidence upon the subject of the measure of damages. The testimony of numerous other witnesses for the plaintiff bore upon this subject. It is true that none of them except Eesley and Pratt testified to the amount of coal used, or gave any estimate or judgment as to the relative quantity chargeable to the different sources of trouble. The defendant offered no evidence as to the quantity of coal used. It does appear that Eesley and Pratt had more knowledge of the quantity of coal used, and the conditions at the premises by reason of their employment, than the other witnesses had. We are not able to agree with appellant's counsel that the testimony of the witnesses Eesley and Pratt was opinion evidence. It was their estimate or judgment, founded on their acquaintance with the situation, as to the relative quantity of coal used by reason of the trouble in the race, and the backwater from below. The witness Eesley was cross-examined at great length upon this subject, and the following questions and answers appear:

"*Q.* And you estimated that this defendant was responsible for how much of that coal bill?

"*A.* I estimated two-thirds, three-fourths.

"*Q.* What did you do that for?

"*A.* Because of conditions that I knew that probably existed, but I have no record of that. I am estimating it from conditions that have existed all the way through."

The language of Justice CAMPBELL in *Kelley* v. *Richardson,* 69 Mich. 436 (37 N. W. 516), is pertinent here:

"The phrase 'expert testimony' is not entirely fortunate as designed to cover all cases where a witness may give his opinions. That is done, in a multitude of cases, by witnesses who have no more personal fitness than any one else, but who have been so placed as to have seen or heard things which can only be described to any one else by giving the impression produced on the mind or senses of the witness. These cases are so common that few persons ever think that what are rightly called facts are at the same time no more nor less than conclusions. Thus, impressions of cold or heat, light and darkness, size, shape, distance, speed, and many personal qualities, physical and mental, are constantly acted on as facts, although not uniformly judged by all observers, for the simple reason that the facts cannot be otherwise communicated. Any person can give such impressions without special experience or special intelligence.

"Beyond these everyday matters, known to all men, are things which most, if not all, persons can become qualified to judge by more or less opportunities of observation, local or habitual, but which require no peculiar intelligence. Then there are branches of business or occupations where some intelligence is requisite for judgment, but opportunities and habits of observation must be combined with some practical experience. This seems to be the beginning or lower power grade of what may be properly termed 'experts;' a word meaning only the acquisition of certain habits of judgment, based on experience or special observation."

So without splitting hairs to determine whether the evidence complained of was opinion evidence, or a conclusion, or the statement of an estimate of a fact, we think that it was admissible, as much as would be the testimony of a witness on an estimate or comparison of the amount or quality of an article. *Withey* v. *Railroad Co.*, 141 Mich. 412 (104 N. W. 773, 1 L. R. A. [N. S.] 352, 113 Am. St. Rep. 533, 7 Am. & Eng. Ann. Cas. 57).

We are of opinion that there was a sufficient foundation laid for this evidence. If there were any doubt about a sufficient foundation for the evidence when given, it was fully supplied by the thorough cross-examination of the witness by appellant's counsel, and the error, if any, was

not prejudicial. This whole subject and the testimony of the witnesses upon the question of damages were submitted to the jury in a very clear and comprehensive charge that is not complained of. It is also, in the same connection, urged that the evidence of damages was indefinite, and not sufficient to support a verdict. We think there was evidence which, if believed by the jury, warranted the verdict in the case. It is often difficult, especially in actions of tort, to determine by evidence the exact amount of damages suffered by a party. Much has to be left to the good sense and sound judgment of the jury. In *Gilbert* v. *Kennedy*, 22 Mich. 117, this court held that a plaintiff in trespass would not be denied the right to recover the actual damages he had suffered because their nature was such that they could not be accurately measured; and, when from the nature of the case adequate damages cannot be measured with certainty by a fixed rule, all facts and circumstances tending to show such damages as are claimed, or their probable amount, should be submitted to the jury, to enable them to form, under proper instructions from the court, such reasonable and probable estimate as, in the exercise of good sense and sound judgment, they think will produce adequate compensation. *Allison* v. *Chandler*, 11 Mich. 542; *Mueller* v. *Mineral Spring Co.*, 88 Mich. 390 (50 N. W. 319); *Lafler* v. *Fisher*, 121 Mich. 60 (79 N. W. 934); *Bowden* v. *Voorheis*, 135 Mich. 648 (98 N. W. 406); *H. J. Reedy Co.* v. *Cameron*, 163 Mich. 638 (129 N. W. 27).

(d) The sixth assignment of error is based upon the ruling of the court permitting the witness to testify that plaintiff had not been bothered with backwater as much in the winter of 1910–11 as it was in the previous winters back to 1905. It has been noted that the suit was begun in May, 1910. It was tried in the spring of 1911, and it is said that this was permitting the witness to compare a winter not in issue, with former years, the purpose being to prejudice the jury by showing that, after the suit was begun, conditions were better. An examination of the

record discloses the fact that this evidence was given upon redirect examination of the witness Eesley. Upon his cross-examination the following occurred:

"*Defendant's Attorney:* I will ask you this: Is the current any different now from what it has been during 1905 up to 1910?

"*A.* Yes; back of our mill. The current is better now.

"*Q.* You mean, just today?

"*A.* No; I mean some months back.

"*Q.* How long?

"*A.* I couldn't say. When the river is all open, just as it is now, the current back of our plant going down is better than it was two years ago.

"*Q.* At the same time of the year?

"*A.* Yes, sir."

On redirect examination, plaintiff's attorney asked the following question:

"*Q.* Have you been bothered as much this winter as you were previous winters, back to 1905, the 1st of December?

"*A.* Not so much this winter."

Then came the objection that the question was irrelevant and immaterial, followed by the statement of plaintiff's attorney that he did not claim any damages for "this winter." The court let the answer stand, to which defendant's attorney excepted. We think that, in view of the cross-examination, appellant's counsel is in no position to complain of the ruling.

(*e*) The ninth assignment of error is that the court erred in charging the jury as follows:

"If you find a verdict in this case for the plaintiff, in fixing the amount that the plaintiff is entitled to recover, you should take into consideration all of the items of expense that the plaintiff was put to for extra labor and fuel while its waterpower was shut down or affected; or, in other words, plaintiff would be entitled to recover, if you find a verdict in its favor, such lawful damage as the proofs in the case show that it has actually sustained."

The above is a short extract from a lengthy charge.

Standing alone, it might be said that it authorized a recovery for all of the extra labor and all of the fuel used, but the court also charged the jury as follows:

"There is evidence in the case that the plaintiff, during the winter time, had trouble with its power by reason of anchor and slush ice in the race above plaintiff's mill; and there is evidence in the case that would warrant the jury in finding that this trouble existed at times when the plaintiff was also troubled with backwater below its mill. Now, I charge you that, if you find that at any time when there was backwater at the plaintiff's mill, that such backwater was the result of negligence on the part of the defendant; and if you also find that at the same time plaintiff's power was crippled by reason of ice in the race, or because the flow of the water in the race had been reduced by the gorging of ice in the race, then I charge you that you could not hold the defendant liable in damages for only such part of such injury as was caused by the act of the defendant, and you could not hold the defendant liable for that part of the injury that resulted from the trouble in the race."

This subject was referred to in other parts of the charge, and, taking the whole charge together, we do not think that the jury was misled by the reference to extra labor and fuel contained in that part of the charge complained of, but that they must have understood that it referred to the damages occasioned by the backwater on account of the ice gorges which it was claimed were formed through the defendant's neglect.

2. (a) It is claimed that the court erred in refusing a new trial for the reason that the verdict was excessive, and against the clear weight of the evidence, and that the jury must have found that all of the backwater, during all of the winter months when coal was burned, was caused by defendant's dam. We have read the entire record with care, and we cannot agree with appellant's claim in this matter. The evidence shows that, prior to the building of defendant's dam, backwater had occurred a few times, but that it was very seldom and was the ex-

ception and not the rule, while, after the dam was built, it became the rule, and not the exception.

What this court said in *Gardiner* v. *Courtright*, 165 Mich. 54 (130 N. W. 322), relating to the reversal of a case upon the question of the weight of the evidence, is applicable here, and the collection of authorities there given justify us in holding that the court committed no error on that branch of the case.

We have examined the other assignments of error, and are of opinion that they present no reason for a reversal of the case. Finding no reversible error in the case, the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred.