MUSKEGON TRACTION & LIGHTING CO. *v.* CITY OF
MUSKEGON.

1. NEGLIGENCE—GAS MAINS—SEWER CONTRACTOR'S NEGLIGENCE—
QUESTION FOR JURY.

In an action by a gas company against a city and a sewer
contractor for damages to its gas mains, evidence as
to defendant contractor's negligence, *held*, to present a
question of fact for the jury.

2. DAMAGES—SPECULATIVE DAMAGES—ESCAPING GAS—LIABILITY.

Where a sewer contractor negligently damaged the mains
of a gas company laid in city streets, he may not escape
all liability because of the difficulty of establishing the
extent of his wrongdoing on the plea that the damages
were too speculative to justify a verdict, although there
was no way to meter the escaping gas, and it could not
be determined to a certainty how much escaped by reason
of the breaks in the mains.

Error to Muskegon; Vanderwerp (John), J.   Sub-
mitted April 21, 1922.   (Docket No. 100.)   Decided
December 5, 1922.   Rehearing denied March 23, 1923.

Case by the Muskegon Traction & Lighting Com-
pany against the city of Muskegon and George Pon-
tarelli for damage to certain gas mains.   Judgment
for plaintiff.   Defendant Pontarelli brings error.   Af-
firmed.

*Carpenter & Jackson* (*L. E. Sauter*, of counsel),
for appellant.

*Cross, Foote & Sessions*, for appellee.

MOORE, J.   The plaintiff is the owner of gas mains
located in the streets of the defendant city.   The city

let a contract to the other defendant to build a sewer at a depth of 17 feet. The plaintiff charges that the breaking of certain of its gas mains and service pipes was due in part to:

(1) Negligent back-filling.
(2) Insufficient tamping, immediately beneath the main; and
(3) The removal of sheet piling without refilling and properly tamping the space occupied thereby.

The defendant denied all of the plaintiff's claim of negligence. At the close of the testimony a request was made for a directed verdict, counsel contending in part as follows:

"I assume that the exclusive control of the streets of this city is in the city; we have had propositions many times and very thoroughly threshed out in Illinois and our courts have held in one case, in several cases, that even where there is a common-law vindication, that the exclusive control of the use of the street is still in the public, for the public uses; any right by which the gas company, a public service corporation, is in this street, is in the nature of a license, that it has no ability to claim that its pipe, when once laid, must lay there inviolate; that its right to maintain the pipe is at all times subject to the paramount right of the city to require its pipe to be removed or adjusted, or such things done with them as may be necessary in the exercise of the governmental powers of the city in serving a higher public need; now, the erection of a sewer would in any case have a higher right than a public service corporation. In this case the gas mains must give way, and my proposition is that the duty was involved upon this public service corporation, knowing, as it is admitted on the stand here, before that work was started by Pontarelli, that this sewer was to be constructed, it would become this corporation's duty to go in there and see that its own mains were protected, taken care of, removed if necessary, put in such shape so they would not interfere in any way with the construction of this sewer, 17 feet down. My next proposition is that in doing that

work, Mr. Pontarelli, under the contract, was exercising the city's governmental powers, paramount of rights of this gas company."

The trial judge declined to direct a verdict and charged the jury in part as follows:

"I charge you, gentlemen, that the plaintiff had the right to have its gas main there in the street and defendants had the right to construct the sewer there in the street, notwithstanding the fact that plaintiff's gas main was here; the right of the plaintiff to maintain its gas pipe on Western avenue is subject and subordinate to the paramount right and power of the city of Muskegon to construct the sewer in question and in this respect the defendant Pontarelli is not chargeable with any negligence because of the fact that the city located the line of the sewer in question, and the question for you to determine, or one of the questions for you to determine, is whether the defendants there in doing the work of building the sewer, so carelessly, negligently and unskillfully performed the work in the manner charged by plaintiff, as to cause injury and damage to plaintiff's gas main and service pipes and cause leakage of gas. If defendant did carelessly, negligently and unskillfully perform the work in the back-filling of the trench, in insufficient tamping of the part of the trench immediately beneath the gas main, or in the removal of sheet piling without refilling and properly tamping the space which had been occupied thereby, and that such carelessness, negligence and unskillfulness on the part of the defendants, if any, resulted in damage to the plaintiff's gas main and service pipes, and if you find that the damage, if any, did not result by reason of any negligence of the plaintiff that contributed to such injury, then the plaintiff is entitled to recover the damage which you may find from the evidence it has suffered, to which I will hereafter call your attention.

"If you do not find that the plaintiff has established by a preponderance of the evidence that the defendants, or either of them, were negligent in the manner I have stated, or if you do not find that plaintiff has established by a preponderance of the evidence that plaintiff was free from negligence contributing to the

injury or damages, then plaintiff cannot recover and your verdict should be for the defendants.

"The contractor, Pontarelli, was not an insurer of the safety and security of such gas pipes, in the construction of his sewer; his only duty was to do the work of constructing the sewer with reasonable and usual care, in the usual and customary method of doing such work; if you find from the evidence that the defendant Pontarelli did the work of constructing the sewer in the usual and customary manner and in a careful and skillful manner, then the plaintiff cannot recover. The right of the plaintiff to have its gas main in the street is subordinate to the paramount and superior right of the defendant; Pontarelli, under his contracts with the city, to lay the sewer in question, cannot be charged with any negligence if he did his work in the usual and customary way of doing that type of work, under similar circumstances and in a careful and skillful manner. If you find from the evidence that the injuries claimed by the plaintiff resulted solely from the performance of the sewer contract and doing the sewer work in the usual and customary way, in a careful and skillful manner, then the plaintiff cannot recover. The plaintiff must prove, gentlemen, negligence on the part of the defendants and the jury cannot presume or find negligence from the mere fact of injury to the pipe; if the testimony shows that the injury to the pipe, if any, might have been brought by other causes, as well as by the acts of the defendants, then the jury is not authorized to guess as to which was the cause."

There was much more of the charge than we have quoted. The plaintiff claimed damages aggregating about $16,000. The jury returned a verdict of $8,628.37. The case is brought here by writ of error.

Counsel claim, we will quote from the brief:

"There was an entire failure to prove negligence. The evidence as to the damages claimed is too speculative and uncertain. We respectfully submit that the case, as attempted to be made by the plaintiff, is too inconclusive to sustain the judgment. The motion to direct the verdict for the defendants should have been

allowed. There was no competent evidence to submit to the jury either the question of negligence or the question of damage."

As to the claim there was no negligence. There was testimony that the backfilling and tamping was not properly done. We quote some of it:

"I had charge of the inspection of that job from the inception to its completion. I had difficulty with Mr. Pontarelli in relation to the back-filling of the trench. He seemed to want to use methods of his own which were not fit. He would want to just tamp it and he didn't want to do that right. Getting down to his back-filling, he didn't want to do that right and there was the difficulty I had with him. That trouble existed during the entire job. I didn't think he did this back-filling in a proper manner, because there was not enough dirt put back in. * * * Some of the filling was O. K. and some of it was not fit at all. It was not put back in layers and tamped like it should and was not wet down like it should have been. It was too loose. The dirt was not put in in layers as the contract called for and tamped down. * * * If this back-filling had been done properly, assuming that the gas mains prior to that time were in proper condition and this trench work and sheet piling had been properly done and the filling and the tamping and the watering, or whatever you term it, had been properly done, I think these mains would have been left in good condition."

The testimony was in sharp conflict and presented a question for the jury.

It is said the question of damages was too speculative to justify a verdict. It is true that there was no way to meter the escaping gas, and that it could not be said to an absolute certainty how much escaped because of the breaks in the main, but it does not follow that a wrongdoes may escape all liability because of the difficulty of establishing the extent of his wrongdoing. See *Hitchcock* v. *Knights of Maccabees,* 100 Mich. 48 (43 Am. St. Rep. 423);

*Eesley Light & Power Co.* v. *Commonwealth Power Co.*, 172 Mich. 78.

The other assignments of error have had our attention. We think it unnecessary to discuss them. The case was tried with great care. We find no reversible error.

The judgment is affirmed, with costs to the plaintiff.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.