## DYER *v.* PEOPLE'S ICE CO.

1. APPEAL AND ERROR—EXCEPTIONS—NEW TRIAL.

   In the absence of exceptions to the decision of the court below, this court cannot review the action of the circuit judge in overruling a motion for a new trial on the ground that the verdict is against the great weight of the evidence and grossly excessive.

2. EVIDENCE — STATEMENT OF FACT — CONCLUSIONS OF WITNESS — ANIMALS.

   In an action for personal injuries caused by a runaway

horse, testimony of the driver that the horse was not a quiet horse, that he was a bad actor, was nervous, and would start off with every little sound, was not inadmissible as a conclusion of the witness, but may be said to be a statement of a fact, since he stated in detail the conduct of the horse.

3. SAME—NOTICE—HEARSAY—ANIMALS—VICIOUS CHARACTER.
Evidence of the driver that he had, prior to his taking charge of the horse, heard that he was a bad actor and had run away, was admissible as tending to show notice of the vicious character of the horse.

4. SAME—APPEAL AND ERROR.
Where defendant's witness had already testified that he could not remember the bridle that the horse wore on the day of the injury, it was not error for the court to exclude an answer to a question asked witness whether he had furnished a bridle that would be loose on the horse's head.

5. TRIAL—INSTRUCTIONS.
Where the substance of requests to charge was given in almost the exact language of the requests, no error was committed in refusing to charge as requested.

6. NEGLIGENCE—INFERENCE—INSTRUCTIONS.
In an action for personal injuries caused by a runaway horse, a charge that negligence may be inferred from the circumstances of the case, that the jury were at liberty to draw the inference of negligence from all the circumstances, if they should find that they warranted such inference, and that the whole question of inference that was to be drawn was a question for the jury, was correct.

Error to Wayne; Hosmer, J. Submitted June 16, 1915. (Docket No. 55.) Decided September 28, 1915.

Case by Agnes F. Dyer against the People's Ice Company, a corporation, for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*E. T. Berger*, for appellant.

*Charles T. Wilkins*, for appellee.

STONE, J.  This is an action on the case to recover
damages for injuries inflicted upon the plaintiff by a
runaway horse belonging to the defendant.  The de-
fendant is, and at the time of the grievances com-
plained of was, a domestic corporation engaged in the
manufacturing business at Detroit.  In such business
it owned and kept at its stables a number of horses
and wagons, among them a horse called the "Louie
horse," and a single ice delivery wagon, used in de-
livering ice to its customers in the city.  The declara-
tion alleged, and on the trial there was evidence tend-
ing to show, that it was well known to the defendant
that said horse was a high-strung, nervous, and irri-
table animal, and that upon the occasion of the injury
complained of the horse wore a bridle which was too
large for it, which permitted the bits to drop out of
its mouth when not being driven.

On September 30, 1912, this horse and wagon, while
in charge of one Charles Dunlap, defendant's driver,
were left standing on Randolph street, the horse
hitched to a weight only, while the driver, as was his
custom, entered a place for his regular midday lunch.
When Dunlap came out of the place where he had
lunched, the horse had the bridle pulled off its head,
and had it under his feet.  Dunlap ran toward the
horse, the door slammed, and the horse started, and
he was unable to stop the horse.  It ran on Cross street
to John R. street, Dunlap trying unsuccessfully to
stop it; but there was no way in which to hold it, as
the bridle was off and between its legs, with the weight
still attached to the bridle.  The horse ran up John R.
street, across Adams, to Elizabeth street, turned west-
erly towards Woodward avenue, and, in turning, swung
across the sidewalk on Elizabeth street and over the
curb, and ran against and upon the plaintiff, who was
kneeling upon the grass fixing some curtains on a
stretcher in front of her house, on the corner of John

R. and Elizabeth streets, inside her lot line, and between the sidewalk and her house. The horse struck the house; one shaft of the wagon and one leg of the horse going through the window, the horse remaining outside. The horse ran against the plaintiff's back, and knocked her down, and underneath the horse and wagon. She was trampled upon by the horse and severely injured. She sustained comminuted fractures of both the bones of her right leg. The fibula had a comminuted fracture about 2½ inches above the ankle. The larger bone was badly crushed and fractured 4 to 6 inches, a spiral fracture, and she was bruised about the knee. There was a bruise on the left leg about halfway between the thigh and the knee. The left ankle was badly bruised and scraped, and the skin corroded halfway to the knee. Her hip and back were bruised, and the zygomatic arch on the left side of her face was broken, depressed, and pushed in, making mastication very painful. Plaintiff was confined to her bed for about 15 weeks, and was then able to sit up. She afterwards used a wheel chair for a time, and has since gone on crutches. The right leg is now about three-quarters of an inch shorter than formerly. She was a married woman, 42 years old at the time of the injury. Her husband died before the trial.

The evidence tended to show that prior to the accident the plaintiff was a strong, healthy woman. Since the injury she has suffered much pain in her head, back, spine, and left leg, is nervous, and does not sleep well, and is unable to perform any labor. Her doctors' bills were upwards of $335, at the time of the trial, which was in November, 1914. Before and at the time of the injury she was earning from $18 to $26 per week keeping boarders and doing fine laundry work. There was much medical testimony by the attending physicians as to the extent and result of the plaintiff's injuries. Upon the trial the plaintiff called the de-

fendant's driver, Dunlap, as a witness for cross-examination under the act of 1909. The trial resulted in a verdict and judgment for the plaintiff of $5,000. A motion for a new trial was made by the defendant, and denied, but no exceptions were taken to the decision refusing such motion. The defendant has brought the case to this court, and has assigned error upon the following grounds:

(1) Because the verdict is against the great weight of the evidence.

(2) Because the verdict is grossly excessive.

(3) Because the court erred in the admission of certain testimony, and in the charge.

The first two reasons are based upon the denial of defendant's motion for a new trial, and could not be raised otherwise. In the absence of exceptions to the decision refusing the motion, we cannot review the action of the circuit judge in overruling the motion for a new trial. It has been so held repeatedly. *Ginn* v. *Coal Co.*, 143 Mich. 84 (106 N. W. 867, 107 N. W. 904) ; *Moore* v. *Insurance Co.*, 143 Mich. 424 (106 N. W. 1116).. We will say, however, that an examination of the entire record satisfies us that, had exceptions been taken to the denial of motion, they would not have been availing, for the reason that upon the merits we are of the opinion that it cannot be said that the verdict was against the great weight of the evidence, or that the verdict was grossly excessive. The foregoing statement of the nature and extent of the injuries shows that the plaintiff was permanently disabled, and her earning ability destroyed, to say nothing of the accompanying pain and suffering. Under such circumstanaces it cannot be said that the recovery was excessive.

It remains for us to consider such of the rulings upon the admission of testimony and the charge as are properly presented and are meritorious.

The fourth assignment of error is to the effect that the court erred in refusing to strike out the following testimony of the witness Dunlap, the defendant's driver, on whose negligence the action is largely based:

"*Q.* Had you known that horse around the barn before you took him out, and given to drive about a week before the accident?

"*A.* I just heard about him.

"*Q.* Did you hear him talked around the barn as the 'Louie horse'?

"*A.* Yes.

"*Q.* What sort of a horse was he? State whether he was a quiet horse, or not a quiet horse.

"*Defendant's Counsel:* I think that is a question for the jury to decide.

"*Q.* Whether he was a quiet horse or not?

"*The Court:* Answer the question.

"*Defendant's Counsel:* I think we should find out what he did and did not do; how the witness used this horse, left him standing or not; and, if so, whether he ran away before.

"*The Court:* Answer the question.

"*Defendant's Counsel:* Note an exception.

"*A.* He was not a quiet horse.

"*Q.* He was not a quiet horse?

"*A.* No.

"*Defendant's Counsel:* I would ask to strike it out as calling for a conclusion, a question that the jury should be allowed to pass upon.

"*The Court:* Motion denied.

"*Defendant's Counsel:* Note an exception.

"*Q.* He is what is called a bad actor?

"*Defendant's Counsel:* I object to that question as incompetent, irrelevant, and immaterial, a question for the jury to decide from the facts as might appear in evidence.

"*The Court:* Answer the question.

"*Defendant's Counsel:* Exception.

"*Q.* He is what is called a bad actor, known as a bad actor?

"*A.* He was called a bad horse around the barn?

"*Defendant's Counsel:* Move to strike it out as calling for a conclusion and hearsay evidence.

"*The Court:* Let it stand.

"*Defendant's Counsel:* Exception.

"*The Court:* You were acquainted with the horse and drove him?

"*A.* Yes.

"*The Court:* He says that he was not a quiet horse.

"*Q.* State whether he was a nervous horse.

"*A.* Yes, he was nervous. He was easily excited, if you call that nervous.

"*Q.* Isn't it a fact, if you wanted to approach him from behind, you would have to be careful how you would go up to him, he would start off?

"*A.* He would start off with every little sound coming from the door; that is, he was accustomed to that.

*Defendant's Counsel:* Move to strike it out, as not responsive and calling for a conclusion. It is a question for the jury."

It will be noted that no exception was taken to the refusal to strike out the last portion of the testimony; but upon the merits of the question we are of the opinion that there was no error in the rulings. Whether answers are conclusions, or statements of fact, is sometimes a close question. The language of Justice CAMPBELL in *Kelley* v. *Richardson,* 69 Mich. 430, 436 (37 N. W. 514), as quoted by us in *Eesley Light, etc., Co.* v. *Power Co.,* 172 Mich. 78, at pages 86 and 87 (137 N. W. 663), is pertinent here. Impressions of personal qualities are constantly acted on as facts, and to say that a horse was nervous or quiet may be said to be the statement of a fact. But in this instance the witness stated in detail the conduct of the horse.

The seventh assignment of error is based upon the admission and refusal to strike out the following testimony of the witness Dunlap:

"*Q.* You had heard, prior to your taking charge of the horse, you had heard of his running away?

"*A.* I had heard of his running away.

188 Mich.—14.

"*Defendant's Counsel:* I move to strike it out as hearsay, and I will take an exception.

"*Plaintiff's Counsel:* Your honor will see that we are asking this witness as one of the employees of the company, a driver of this kind; it shows the witness' knowledge of what the horse was.

"*The Court:* All right.

"*Q.* You had heard that he had run away several times prior to the time you took charge of him?

"*The Court:* What is the object of that?

"*Plaintiff's Counsel:* That he knew he had run away prior to this time.

"*The Court:* Answer the question.

"*Defendant's Counsel:* I would like to make an objection to that question, as calling for hearsay, and incompetent, irrelevant and immaterial.

"*Q.* It had been called to your attention several times that the horse was a bad actor and a runaway?

"*A.* Yes, he had.

"*Defendant's Counsel:* I have never seen a more willing witness, and take exception to any remarks of that kind. I move to strike out the answer.

"*The Court:* Let it stand.

" (Objected to as hearsay.) "

This evidence was admissible as tending to show notice of the vicious character of the horse. *Robbins* v. *Magoon & Kimball Co.,* 186 Mich. 672 (153 N. W. 13).

What we have already said applies to the eighth, ninth, and tenth assignments of error.

Under the twentieth assignment of error, the only matter excepted to was the ruling excluding an answer to the following question put to the defendant's witness Smith:

"*Q.* Did you furnish to Charles Dunlap for use on 'Louie' a bridle that would be loose on Louie's head?"

This witness had already testified that he could not remember the bridle that "Louie" wore on the day of the injury. It was therefore immaterial whether or not he had furnished for use a bridle, whether loose

or not. No other ruling was made that was excepted to in that connection, and we find no error here.

The twenty-first assignment of error is to the effect that the court erred in refusing to charge the jury as requested in defendant's seventh and eighth requests to charge. A reference to page 80 of the record will show that the substance of these requests was given, and in almost the exact language of the requests.

By the twenty-second assignment of error it is claimed that the court erred in charging the jury as follows:

"Negligence, like any other fact, may be inferred from the circumstances of a case. And so from the case and testimony which has been offered you are at liberty to draw the inference of negligence, and if you should find from—you are at liberty to draw inference of negligence from all the circumstances, if you should find that they warrant such inference. But, after all, the whole question of inference that is to be drawn is a question for you and not a question for me."

There is evidently a typographical error in the above quotation. However, in substance the charge was correct, and has been approved by us many times. *Alpern* v. *Churchill*, 53 Mich. 607-613 (19 N. W. 549); *Barnowsky* v. *Helson*, 89 Mich. 523-527 (50 N. W. 989, 15 L. R. A. 33); *Schoepper* v. *Chemical Co.*, 113 Mich. 582-589 (71 N. W. 1081); *La Fernier* v. *Lighter & Wrecking Co.*, 129 Mich. 596, 606 (89 N. W. 353); *Maki* v. *Copper Co.*, 180 Mich. 624 (147 N. W. 533).

We have laboriously examined this record, and finding no reversible error therein, the judgment of the circuit court is affirmed.

BROOKE, C. J., and KUHN, OSTRANDER, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.

The late Justice MCALVAY took no part in this decision.