GUNGRICH *v.* ANDERSON.

1. EVIDENCE—PREJUDICIAL ERROR—CHILDREN—APPEAL AND ERROR.
    Though testimony of plaintiff in an action for assault and
    battery against her employer that she had several children,
    giving their respective ages, was improper, and ought to
    have been excluded by the trial court, a ruling admitting
    the evidence was not prejudicial where it had already ap-
    peared that plaintiff had a child, and that the alleged
    quarrel arose over her request to leave her employment
    and visit the infant.

2. SAME—CONCLUSION—TRESPASS VI ET ARMIS.
    On an objection of the defendant that plaintiff was testify-
    ing to a conclusion, the court did not err in admitting
    plaintiff's statement that she declined to work for a week
    following the assault and that it was because of the in-
    jury she had received in the assault.

3. TRIAL—APPEAL AND ERROR—ARGUMENT—MISCONDUCT OF COUN-
    SEL—SAVING QUESTIONS FOR REVIEW.
    It was erroneous for plaintiff's attorney to invite the jury to
    give her what they would consider a mother or sister of
    their own would be entitled to receive, under like circum-
    stances, but in the absence of a ruling of the court and
    exception to it, there was no question for the Supreme
    Court.

4. TRESPASS—ASSAULT AND BATTERY—VI ET ARMIS.
    Where plaintiff, who was a domestic servant of defendant,
    asked for a few days off to enable her to visit her child in
    a neighboring town, and defendant refused the request,
    over which an altercation ensued, and plaintiff claimed
    to have been severely injured, the rules applicable to a
    trespasser were not in effect as to plaintiff's right to re-
    main; she had the right to a reasonable time to collect
    her belongings and make ready for departure.

5. SAME—REASONABLE FORCE—OPPORTUNITY TO DEPART—MASTER
    AND SERVANT.
    The defendant was not entitled to use force to expel the
    servant, as in case of an intruder, or to force her to de-

part without reasonable notice to enable her to leave peaceably.

6. SAME—DAMAGES—CHARGE—TRIAL—PROVOCATION.

   The charge of the court that defendant would not be justified in assaulting plaintiff, if the latter called her a liar, but that the evidence went to the amount of damages, was not error, but correctly stated the law.

7. SAME—NEW TRIAL—VERDICT.

   *Held*, also, that a verdict of $250, reduced by the trial court to $150, was not so excessive, as modified, that the appellate court should award a new trial.

Error to Muskegon; Sullivan, J. Submitted October 12, 1915. (Docket No. 33.) Decided December 21, 1915.

Case by Emily F. Gungrich against Mary E. Anderson for assault and battery. Judgment for plaintiff. Defendant brings error. Affirmed.

*Turner & Turner*, for appellant.

*Cross, Vanderwerp, Foote & Ross*, for appellee.

STONE, J. This is an action on the case to recover damages for an assault and battery alleged to have been committed by the defendant upon the plaintiff on the evening of the 9th day of April, 1914, at the village of Montague, and for the resulting injuries. The declaration charges a violent assault upon the person of the plaintiff, and that defendant with great force and violence pulled and dragged plaintiff about and struck her a great many blows with her fist, and threw plaintiff against the wall of the room where said assault took place, and also threw the plaintiff upon the floor, striking and pinching the plaintiff, pulling her hair, and tearing off her dress, by means whereof the plaintiff then and there became and was greatly hurt, cut, bruised, and wounded in and about her face, head,

arms, and back, and so continued for the space of four weeks; that plaintiff suffered great bodily pain and mental distress, and was obliged to undergo medical treatment, and was hindered and prevented from performing and transacting her lawful and customary occupation of doing housework, whereby she lost great gains, etc., and she also averred that she was, by said assault, permanently injured in and about her head, back, and spine, and was unable to do her accustomed work, etc. The plea was the general issue.

It appeared upon the trial that the plaintiff was a married woman, upwards of 50 years of age, and was, at the time of the alleged assault, employed by the defendant as a domestic in the home of the latter. There was a sharp conflict in the testimony as to who was the aggressor, and as to the nature and extent of the assault.

The plaintiff, in substance, testified that on the occasion of the assault a neighboring woman came to the house and into the room where the parties were, and invited the plaintiff to go with her to Grand Rapids on the following Sunday, where the plaintiff might visit her child; that plaintiff turned to defendant and asked permission to go; that defendant refused to let plaintiff go, whereupon a somewhat heated discussion and controversy arose between the parties, wherein defendant said to plaintiff: "No; you can't go. You are out every night, all night"—which statement was denied by plaintiff. Plaintiff further testified:

"Well, she said I couldn't go. I said: 'All right; there is something else that I would like to talk to you about; it is about the dollar that the man gave me. You say that this man is supplying me with money because he left a dollar for my little girl.' She [defendant] said: 'Now, then, you get out of here;' she said, 'You get right out of here,' and she opened the door, and when she told me to get out, I started to take my apron off to go. I turned into my bedroom to take

my dress off, and I said, 'I will go when I get ready,' and I went in to get ready, and before I knew it, without a moment's warning, she was on my back, and she grabbed me by the back and dragged me to the door that she had opened, that led into the buggy shed, and instead of throwing me out, as she said she would throw me out, she throws me on the couch that was there by the door, and I was so surprised I had nothing to say, never said a word to her. I got up, and when I got up, instead of throwing me out as she wanted to do—I didn't notice whether the door was opened or closed then—but she took me once more. While I was down she dug her fingers into my arms, just like that (illustrating). She didn't slap me, but got her main hold with her fingers in that way, and then when I got up from that position, she then took me again, the second attack, and threw me across the room near my bedroom door, and under a little table that was there. I said, 'That must be a pleasure to you Mrs. Anderson.' She grabbed me again, then got me up to the wall with my back, and went like this (illustrating), as hard as she could, and I stood there by the door, and I noticed that my dress was torn, and I went into the bedroom and I stood by the bed to take my dress off, and in taking off the dress I made this remark: 'Well, it is a shame to have to be used like this.' And then it was so late at night, my own house was closed up for the winter, and I didn't know what to do, I said, 'Isn't it terrible,' out loud, 'to be used like this.' She made one spring from the stove, where she was, onto me, and fought for the dress, and I fought with her, but I wasn't nothing in her hands. She got the dress and took it, opened the stove door and threw it in, like that (illustrating). She said, 'There you old bitch you.' * * * And I went into my bedroom again, and when she got into the bedroom she went into my hair. This was during the time that this dress affair was going on. She came back and threw me backwards onto the bed, and there is where the fight, the real fight was then."

The plaintiff then described how her hair was pulled by the defendant. The above is only a part of plaintiff's testimony relating to the assault.

Defendant offered testimony tending to show that plaintiff was the aggressor, and that defendant only acted in self-defense. The case was submitted to a jury, and the plaintiff recovered a verdict and judgment for $250. The defendant moved for a new trial upon the following grounds:

(1) That the verdict was contrary to the great weight of the evidence.

(2) That the verdict was grossly excessive in amount.

(3) Because the jury were allowed to aggravate actual damages, when there was no claim in the declaration that an assault and battery was perpetrated without cause, provocation, or excuse, and no allegation of a wilful or wanton assault.

(4) Because the charge of the court did not correctly set forth the law as applicable to the facts developed upon the trial of the case.

(5) Because the charge ignored the claim of defendant as to what occurred immediately preceding the touching of plaintiff's person by the defendant.

(6) That under the pleadings and the claim of the parties upon the trial, the jury should have been instructed that if they found that defendant was only asserting what she claimed to be her legal rights, and did not act oppressively, wantonly, or maliciously, then the only damages they could assess would be what plaintiff had actually sustained.

(7) Because in the charge the law regarding the rights of the parties in the home of defendant was not correctly set forth, in that the jury should have been instructed that if the plaintiff refused to leave the house upon defendant's request, then the defendant had a right to use such force as was necessary to eject her therefrom.

The trial judge in disposing of the motion for a new trial, held that the verdict and judgment were excessive, and directed that unless the plaintiff remitted $100 of the judgment, a new trial should be granted. Thereupon the plaintiff remitted that sum, leaving the judgment to stand for the sum of $150, and the mo-

tion was denied and exception duly entered. The defendant has brought the case here for review, and there are 17 assignments of error.

The first 3 assignments of error relate to that part of the testimony of the plaintiff wherein she was permitted to testify about her children, and what her family consisted of, the number and age of the children, etc. That she had a child in Grand Rapids that she wanted to visit, appeared in her testimony relating to the assault. We are unable to see any relevancy, however, to the remainder of her testimony, upon the subject of her children, or family. We do not think, however, that the ruling admitting this testimony was so prejudicial as to justify a reversal. It probably could have no bearing, except upon the measure of damages, and as the trial judge considered that subject upon the motion for a new trial, and the judgment has been reduced in amount, we cannot say that the error here complained of resulted in a miscarriage of justice.

By the fourth assignment of error the following testimony of the plaintiff is complained of:

"I refused to work the first week after this happened. I was too sore, no strength, my mind was—I couldn't work.

"*Q.* Whether or not this was due to this injury you received at the hands of Mrs. Anderson?

"*A.* Yes, sir."

This testimony was objected to as being a conclusion. The objection was overruled, and an exception taken. We think that the witness was testifying to a matter of fact, and that there was no error in the ruling. *Dyer* v. *Ice Co.*, 188 Mich. 203 (154 N. W. 135).

By the fifth assignment the following language of one of plaintiff's counsel in his argument to the jury is complained of:

"Give her [plaintiff] what you would want your mother or sister to have under like circumstances."

That this language was improper we have often held. From an examination of the record, however, it does not appear that the attention of the court was called to this matter, nor was any ruling asked for, but defendant's counsel simply excepted. We have repeatedly held that unless a ruling is requested of, or made by the court, an assignment of error, based upon an exception to improper argument, will not be received. *Spencer* v. *Johnson,* 185 Mich. 85 (151 N. W. 684), and cases there cited.

The remainder of the assignments of error relate to the charge of the court, and the overruling of the motion for a new trial. In the course of a lengthy charge the trial court said:

"But whether Mrs. Gungrich called Mrs. Anderson a liar or not, Mrs. Anderson for that had no right to seize Mrs. Gungrich by the arms to put her violently out of the house, and if she did seize Mrs. Gungrich by the arms to put her violently out of the house, before Mrs. Gungrich had a reasonable and proper time to go to her room and pack up her clothes, Mrs. Anderson would be guilty of an assault and battery, and Mrs. Gungrich is entitled to recover some compensation for the injury that was done her. There is where this matters turns upon.

"If without giving her time, she took her by the arm and forced her up to the door, and opened the door to go out, Mrs. Gungrich had a right to resist that also, and to refuse to go, because she did not have her proper time. The rights are relative in that matter.

"She had a right to go to her room, and the word 'liar' would not justify Mrs. Anderson in putting her out immediately upon that occasion. Now that is the law of this State.

"Now, take it from me. Don't say that, 'I would have done the same thing myself,' because that isn't the law. The law is to be taken by the jury, from the court, and when any person unlawfully lays hands upon one, the person that is assaulted has a right to resist.

"Now, what took place there after that? It was all in connection with whatever did happen there. This waving of a dress, saying that was evidence, and all that kind of thing—neither would that justify an assault, and neither, then, because of that waving of the dress, would Mrs. Anderson have a right to clutch it from her, to pull it away. She would have no right to do that."

The above portion of the charge, paragraph by paragraph, was covered by the assignments of error. It should be remembered that the plaintiff was a domestic servant of the defendant, and as such servant was a member of the household. The rule applicable to a trespasser did not apply. Plaintiff had a right to be there until she was discharged, and when discharged she was entitled to a reasonable time and opportunity to gather her belongings together, and prepare for removal. This trouble occurred in the evening, which was a circumstance to be considered in determining whether the plaintiff was required to immediately leave the house, where she had a right to be until discharged. In our opinion the court did not err in its statement of the law applicable to the case. We think the defendant was not justified in using force to eject the plaintiff from the house until she had been given a reasonable time in which to leave. The rule laid down by the Iowa supreme court in *Redfield* v. *Redfield,* 75 Iowa, 435 (39 N. W. 688), is the correct one. Defendant had no right to attempt to eject plaintiff by force, without reasonable notice to the latter to enable her to go peacefully.

We have examined the remaining portion of the charge. Attention was called to the issue wherein it was claimed by defendant that plaintiff called her a liar. The court said:

"I said that would not justify an assault, yet still that is a proper thing for you to take into consideration as to damages. That is for you to weigh and con-

sider as an element going to fix the amount of dam-. ages. If she didn't call her a liar, that is a matter also for you to take into consideration as fixing the amount of damages, because where a person invites an assault by words, though no words will justify an assault, yet, still, they ought not to recover the same damages, as where the assault is unprovoked, without good cause or reason."

We find no error in the charge. We do not think the court erred in denying the motion for a new trial.

We cannot say that the verdict, as reduced, was contrary to the great weight of the evidence. There was much conflict in the evidence. The jury were the triers of the facts, and they found for the plaintiff. It is not for us to pass upon a mere conflict in the evidence. We find no reversible error in the record, and the judgment of the court below is affirmed.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.