### LASKOWSKI *v.* PEOPLE'S ICE CO.

1. DAMAGES—PAIN AND SUFFERING—LOST EARNINGS.

   Three thousand five hundred dollars for very severe injuries to the person of plaintiff, a female, by a runaway horse, including bruises over the entire body, two collarbones and ribs broken, chest crushed, shoulder dislocated, and various strains and hurts, was not excessive, upon testimony showing permanent impairment of plaintiff's earning capacity.[1]

2. SAME—CHARGE—NEGLIGENCE—ANIMALS.

   Error was not committed by the trial court in refusing a request of defendant to the effect that if plaintiff was nervous and the condition was not the direct effect of the

---

[1] As to excessiveness of verdicts in actions for personal injuries other than death, see note to L. R. A. 1915F, 30.

accident, but was brought on by her actions or by change of life, no damages should be awarded, where the court instructed the jury that, in order to entitle plaintiff to recover, they must find that defendant was negligent, that plaintiff was free from contributory negligence, and that the injuries were the proximate result of defendant's negligence: that the jury should take into consideration in fixing the amount of the damage all the consequences of the injury, future as well as past, including the bodily pain, etc., the rights of defendant being carefully protected by the charge.

Error to Wayne; Perkins, J., presiding. Submitted October 20, 1915. (Docket No. 163.) Decided March 30, 1916.

Case by Anna Laskowski against the People's Ice Company, a corporation, for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Berger & Milburn,* for appellant.

*Charles T. Wilkins,* for appellee.

BROOKE, J. In this case plaintiff seeks to recover damages for injuries received by her in being knocked down and run over by a horse and wagon owned by the defendant company. She was injured in the same accident which caused the injury to one Mrs. Dyer, who recovered a judgment against defendant, which was affirmed by this court. *Dyer* v. *Ice Co.,* 188 Mich. 203 (154 N. W. 135). Reference to that opinion obviates the necessity for an extended statement of facts in the case at bar.

As the runaway horse dashed across the curb and into Mrs. Dyer's yard, the plaintiff, who was upon the sidewalk accompanied by her young daughter, seems to have sought refuge in the yard, when the frantic horse knocked her down, and one or both wheels of the delivery wagon passed over her body. The plain-

tiff recovered a verdict of $3,500. A motion for a new trial was made and denied, and, unlike the situation in the case of *Dyer* v. *Ice Co., supra,* the record in the case at bar shows an allowance of an exception to the denial of a motion for a new trial.

In this court appellant seeks a reversal upon the following grounds:

(1) Because the verdict is against the great weight of the evidence; (2) because the verdict is grossly excessive; (3) because the court erred in the admission of certain testimony; (4) because of the failure of the court to give an instruction requested by the defendant.

We will discuss these various questions in the order named.

1. Counsel for defendant earnestly request that this case be considered upon its own merits, and aver that the record here presented is essentially different from that presented in the *Dyer Case.* We have therefore carefully examined the testimony, and, where necessary, we have compared it with that contained in the record of the *Dyer Case.* While in some respects the record in the case at bar is somewhat fuller than was that in the earlier case, it does not essentially differ therefrom.

Upon the question of defendant's negligence which grows out of the alleged fact that the horse which ran away was an unruly, nervous, and somewhat fractious animal, easily excited, and liable to get beyond the control of its driver, there can be no doubt that the evidence introduced on behalf of plaintiff was ample to raise a question for the determination of the jury.

It is equally true with reference to the claim of the plaintiff that at the time of the accident the horse was being driven with a bridle too large, and which ordinarily was used upon another horse. While it is true that defendant placed upon the stand a greater number of witnesses who testified as to the quiet character of

the horse than the plaintiff produced as to its unruly character, still we are of opinion that it cannot be said as a matter of law that the verdict was against the weight of the evidence in that sense which requires the appellate court to set it aside for that reason.

2. Is the verdict grossly excessive? The physician who examined plaintiff within a few minutes after the injury testified as follows:

"I made an examination of her at that time, and found that she was in a semiconscious condition. She could not answer all the questions, was moaning, and seemed to be just partially conscious. She gave all indications of pain; she could hardly breathe; she had been crushed. I ascertained from my examination that she had several bones broken, both collar bones, two ribs, shoulder dislocated, her neck was hurt, and her head and one of her knees. It was the third and fourth ribs on the right side, and her right shoulder was dislocated. Her head was bruised and her jaw, and her neck had been wonderfully strained, and she could hardly move her head. I noticed other bruises about her body; she was hurt all over. I found the woman nearly dead. Her chest had been crushed. Some heavy substance had passed over her chest, probably the wheel of the wagon, fracturing both collar bones, dislocating the right shoulder, fracturing two ribs, and injuring her head and neck and one of her knees. I bandaged her up, reduced the dislocated shoulder, and bandaged up her chest and applied the necessary dressings. This condition would certainly cause pain, very severe pain; a fractured bone is usually painful."

The plaintiff was confined to her bed for many weeks after the accident. At the time of the trial, some two years later, she claimed to be suffering from traumatic neurasthenia. Evidence was introduced tending to show loss of earnings, and permanent loss of capacity to earn in the future. This element of damage alone, if the jury believed the evidence, was sufficient to support a larger verdict than was rendered. But, if there had been no evidence of loss of earnings, or of

the loss of capacity to earn, we are of opinion that the verdict could not be held to be grossly excessive in view of the physical injuries and the pain and suffering which would inevitably follow.

3. Several assignments are based upon alleged erroneous rulings touching the admission or exclusion of testimony. For the main part these questions arose in the Dyer trial and were discussed by Mr. Justice STONE in our opinion in that case. We find no reversible error in the conduct of the trial in this respect.

4. Error is assigned because of the refusal of the court to give defendant's thirtieth request to charge, which is as follows:

"If you believe that the plaintiff is nervous, and that the condition is not the direct result of the accident, but is brought on by her own actions, or is the material condition liable to women at about her age—change of life—then no damages can be allowed for that condition if you should find for the plaintiff."

It is claimed that the refusal of the court to give this request amounted to a refusal to present to the jury the defendant's theory of the case. In this connection defendant presented the evidence of Dr. Spitzley, who examined plaintiff during the trial, and gave expert testimony as to her condition and as to his theory of the causes producing or contributing thereto. It was his belief that the highly nervous condition in which he found the plaintiff was not attributable to the traumatism, but that it was more reasonable to believe that it resulted from the menopause, or change of life, which comes to all women at or about a certain age, which age he believed plaintiff had attained. It is worthy of note that the record, so far as it speaks upon the subject, tends to establish the fact that this physiological change had not at the time of the trial come to the plaintiff. But, even if the contrary were true, we are disposed to the view that the court properly

safeguarded the defendant's rights in his charge, as appears from the following excerpts:

"The defendant further claims, as I understand it, that the plaintiff was not permanently injured. It claims that the injuries she actually received have been practically repaired by the usual processes of healing, and that she has recovered from the direct and immediate consequences of the injuries received on this occasion. That she is not now suffering from traumatic neurasthenia as a result of the injuries received on that occasion, but, as a matter of fact, simulating many of her symptoms, pretending to be more seriously injured than she really was. * * * It must appear also, in order to entitle the plaintiff to recover: *First,* that the defendant was negligent; *second,* that the plaintiff was free from contributory negligence; and, *third,* that the injuries complained of were the proximate result of the defendant's negligence. That is the direct result of the defendant's negligence. * * *

"I have said that the negligence alleged in this case must have caused the injuries complained of. * * *

"In conclusion, therefore, gentlemen, if you find under the evidence and these instructions that the plaintiff is entitled to recover, then in fixing the amount of damage you will take into account all the consequences of the injury, future as well as past, including the bodily pain which is shown by the evidence to be reasonably certain to have naturally resulted from the injuries. * * *

"If you find for the plaintiff, you cannot allow any damages except for such injuries as are shown to be the direct result of the accident."

We have examined the assignments of error not here discussed, and find them without merit.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.