*In re* NIEMSCHACK'S ESTATE.

1. TRIAL—SUFFICIENCY OF EVIDENCE—QUESTION FOR JURY.

In a will contest case, on the ground of undue influence, in determining whether a case is presented for the jury, the testimony must be considered most favorably to the claim of undue influence.

2. WILLS—EVIDENCE—INFERENCES.

In will contest case, evidence *held,* of sufficient probative force to justify an inference of undue influence.

3. SAME—GREAT WEIGHT OF EVIDENCE.

Where there are ample facts from which the jury had a right to infer that the will was the result of undue influence, it cannot be said that a verdict in favor of contestants is against the great weight of the evidence.

Error to Wayne; Webster (Arthur), J. Submitted April 20, 1928. (Docket No. 82, Calendar No. 33,569.) Decided October 24, 1928.

Joseph Niemschack presented for probate the last will of Peter Niemschack, deceased. On objection of John Niemschack and another, the will was certified to the circuit court. Judgment for contestants. Proponent brings error. Affirmed.

*Harold F. Coyle* (*Cashan P. Head,* of counsel), for appellant.

*Frank J. Riggs* and *Hayes & Maurer,* for appellees.

McDONALD, J. Peter Niemschack was a farmer living in Wayne county, Michigan. He died December 27, 1923, leaving a will in which he disposed of

an estate valued at about $40,000. The beneficiaries were three sons, Joseph, Edward, and John, and three children of their deceased brother. The major, portion of the estate was left to Joseph, who presented the will for probate. It was contested by John and Edward on the ground of mental incompetency and undue influence. On the trial in the circuit court, mental incompetency was abandoned as an independent issue, and the case went to the jury on the question of undue influence. At the close of the proof the proponent moved for a directed verdict on the ground that there was no evidence the will had been procured through undue influence. The court withheld his disposition of the motion and submitted the issue to the jury. The verdict disallowed the will. Motions for judgment *non obstante veredicto* and for a new trial were denied. Judgment was entered on the verdict. The proponent has brought error.

The first question to be considered is whether the record presents a case for the jury. In determining this question, we must consider the testimony which is most favorable to the claim of undue influence. This testimony tends to show that the testator was upwards of 83 years of age when he made the will. His wife had died four weeks previously. It was their intention to divide the property in equal shares with their children. After the mother's death, Joseph requested his father "to sign everything over to him." The father refused to do so, saying, "I will sign nothing. I want things equally divided." Joseph was 45 years of age, was unmarried and lived alone with his father. They had no housekeeper. The father had dropsy and heart disease. There is evidence that Joseph spent most of his time "bumming around," left his father alone

and did not provide food for him; that he nagged him, cursed and swore at him and called him vile names, at which times the father cried and was afraid of him; that the father desired to make his will and divide the property equally among his children and requested his son Edward to arrange an appointment with a scrivener; that such an appointment was made but the testator was unable to keep it because Joseph would not take him there; that later the testator became seriously ill and was confined to his bed for four days before his death; that the will was executed about 12 o'clock at night; that testator lapsed into unconsciousness two hours later and died the next morning about 10 o'clock; that at the time of its execution the testator was very weak, had a high fever, could not sit up in bed without being supported; that Joseph sat on the bed with his shoulder braced against him during all of the time the will was being prepared; that he interrogated him in a loud voice, and, when he got a response, said to the scrivener, "Joe, did you hear that, mark down $2,000 for Ed," etc.; that Edward requested him to get a doctor and a priest, but that Joseph refused to do so, saying, "to hell, I am going to get his statement first before I get a doctor or a priest;" that Edward left to get a priest, and Joseph was the only member of the family present when the will was prepared and executed. Two hours thereafter a friend of the family called at the house. He testified:

"Joe told me when I got there that his father had made a will. Joe said: 'I got just what I wanted;' then he started working his hands this way, and he took me in the chicken coop and he gave me three ducks and a rooster."

Joseph testified that he was with his father every day during his last sickness; that three days prior to his father's death he, Joseph, had a lawyer come to the house to look over deeds and abstracts but did not ask him to prepare a will; that the first time he made any arrangements for a will was the night before his father died, when the will in question was executed. As to these arrangements, he testified:

"Well, I was prepared for it. I was getting prepared.

"*Q.* Is that the first time you prepared for your father making a will?

"*A.* That is the first time."

In preparing for the will, he did not get a lawyer, but brought a friend, Joe Urbanek, a man unskilled in the drafting of wills. Of this, he testified that he went to Urbanek's house and said:

"I said, 'Joe, can you read or write?' He says, 'yes.' I says, 'will you do a favor for me in case we need you?' He said, 'yes,' he says, 'what kind?' I says, 'I think my father wants to talk with Edward and I think he wants to separate us two boys, that is what I think, but I don't say he does or not, but in case he does I will be prepared.'"

Considered collectively, the facts and circumstances are of sufficient probative force to justify an inference of undue influence. They presented a question for the jury. Therefore the court did not err in denying proponent's motion for a directed verdict and in refusing to enter a judgment *non obstante veredicto.*

Error is also assigned on the refusal of the court to grant a new trial for the reason that the verdict is against the great weight of the evidence.

The learned circuit judge who heard the testimony and is in a better position than we are to judge of

the credibility of the witnesses is of the opinion that the verdict is not against the great weight of the evidence. We have read the record carefully and agree with his conclusion. There are ample facts from which the jury had a right to infer that the will was the result of undue influence on the part of Joseph Niemschack.

The judgment is affirmed, with costs to the contestants.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.