*In re* LIVINGSTON'S ESTATE.
LIVINGSTON *v.* LIVINGSTON.

1. APPEAL AND ERROR—WILLS—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.

On appeal from judgment for proponent notwithstanding verdict for contestant in will contest, testimony is considered in the light most favorable to contestant.

2. WILLS—UNDUE INFLUENCE—EVIDENCE.

Evidence showing that testator was strong, able, active, determined, sober, not easily influenced, and thrifty and had never sought to change his will during interval of upwards of five years between date of its execution and date of his death tends to indicate that the instrument expressed his own desires rather than the overpowering influence of others.

3. SAME—UNDUE INFLUENCE—UNNECESSARY DISCOMFORT OF DYING TESTATOR—EVIDENCE.

Proponent's subjection of testator to unnecessary discomfort while he was dying would not be evidence of the exertion of undue influence upon him in the making of a will several years before.

4. SAME—UNDUE INFLUENCE—TESTATOR'S UTTERANCES—EVIDENCE.

In contest of will of which testator's second wife was proponent, testator's alleged utterances that her daughter by her first husband had come into his room to kill him and that he had said: "Mother, Gilbert [contestant] and I are coming," standing alone, do not constitute evidence of undue influence.

5. SAME—UNDUE INFLUENCE—EVIDENCE OF DOMINATION.

In order to establish undue influence in the execution of a will, there must be proof of acts of domination.

6. SAME—UNDUE INFLUENCE—CONTESTANT'S BURDEN OF PROOF.

In contesting a will upon the basis of undue influence, the burden is on the contestant to establish that improper influence was exerted and that it had the effect of overcoming the will of testator.

7. SAME—UNDUE INFLUENCE—OPPORTUNITY.

Undue influence in the execution of a will may not be inferred solely from the fact that there was opportunity to exercise it.

8. SAME—UNDUE INFLUENCE—DISINHERITANCE OF ONLY SON.

Fact that testator left nothing to his only son, a man 50 years of age, did not indicate subversion of testator's own intentions.

9. SAME—UNDUE INFLUENCE—SECOND WIFE OF TESTATOR.

Evidence of exercise of undue influence by testator's second wife held, insufficient to present issue to jury.

10. SAME—PROVINCE OF COURT OR JURY IN WILL CONTEST—WISDOM OF DISTRIBUTION.

It is not the province of the court or jury to substitute their judgment for that of the testator, or to correct a seeming injustice, for so long as the testator was of sound mind and expressed his own desires in the instrument, he was at liberty to make whatever disposition he chose (3 Comp. Laws 1929, § 13478).

Appeal from Wayne; Miller (Guy A.), J. Submitted October 23, 1940. (Docket No. 130, Calendar No. 41,358.) Decided December 10, 1940.

In the matter of the estate of William T. Livingston, deceased. Helen M. Livingston presented for probate the last will and testament of deceased. W. Gilbert Livingston filed objections thereto. Contest certified to circuit court. Judgment for proponent notwithstanding verdict for contestant. Contestant appeals. Affirmed.

*Pear, Campbell, Langs & Tyler,* for proponent.

*Armstrong, Weadock, Essery & Helm,* for contestant.

BUTZEL, J.   The sole question before us is whether the trial court correctly ordered that an instrument be admitted to probate as the last will and testament of William T. Livingston, notwithstanding the verdict of a jury finding that it was not his will. In our review we shall consider the testimony in the light most favorable to contestant. *In re Niemschack's Estate,* 244 Mich. 469. We are to determine whether there is any evidence in the record from which the jury could properly find that undue influence was exercised or fraud committed on the testator. It is contestant's claim that while any one fact or circumstance may not be sufficient proof, "yet the entire train of facts and circumstances, considered collectively, supports a reasonable inference that undue influence was in fact exercised by proponent upon the deceased."

William T. Livingston died on November 27, 1939, at the age of 81 years. His heirs-at-law were his widow, Helen M. Livingston, proponent and appellee,

and his son, an only child, W. Gilbert Livingston, contestant and appellant. Proponent was the testator's second wife; they were married on December 1, 1934. At the time of the testator's death he was president of the R. H. Fyfe & Company of Detroit, Michigan, a very large retail shoe store with which he had been actively and continuously connected for approximately 66 years. He was industrious, exceptionally thrifty and frugal, strong-willed, and very active until shortly before his death. An associate spoke of him as having been "very close-mouthed" about any of his plans.

The record shows that the contestant is a man of high character, fairly on in years. He is an executive in a savings and loan association in Bronxville, N. Y. The proponent, deceased's widow, was 57 years of age when she married decedent. She had had two previous marriages. On the death of her first husband, by whom she had a daughter, she remarried; the second marriage was terminated by divorce.

The instrument admitted to probate by the court below was executed on January 26, 1935. By its terms all the testator's property was left to proponent if she survived her husband. The instrument recited that the maker had not forgotten the contestant, but that he had made "substantial gifts" to him during his lifetime. It was provided that if his wife should predecease him, one-half of the estate should go to her daughter, and the other half to his son, in trust for the benefit of the son's three children. At the time the will was drawn, deeds and other instruments were executed to place title to certain of the testator's sole property in himself and wife as tenants by entireties; other items were conveyed to his wife solely.

It was shown that the testator had been acquainted with proponent for many years prior to the death of his first wife, but there was no close friendship until a year or two before the marriage. After the death of his first wife, he gave proponent some financial assistance when she was having difficulties with her collateral loans at a bank. There was testimony to the effect that she visited the testator at his hotel within six weeks after he became a widower. In January, 1934, almost a year prior to the execution of the will now being contested, and before his marriage to proponent, he made a previous will giving proponent $50,000 ''for the many kindnesses'' shown him by her, and except for another small legacy, the residue was to go to contestant. This was during the pendency of a suit by proponent against her second husband for separate maintenance. Shortly thereafter, she amended her bill of complaint in that action to relinquish her claims against her husband for repayment of loans and allowances for alimony, and prayed for an absolute divorce. It is said that at about this time, the testator, although theretofore very frugal in his habits, went to beauty parlors for manicures, began to smoke cigarettes more frequently than before, and proudly displayed a gold cigarette case which was the gift of proponent. This period marked a change in attitude toward his son. There is some testimony tending to show that proponent and testator did not receive a very cordial welcome when they went East immediately after their marriage. Contestant gave testimony of incidents tending to prove that proponent was exacting and ungenerous in her treatment of others. This, however, does not show that she prevented testator from exercising his free will.

Although a period of over five years elapsed between the execution of the will and testator's death, it was shown that he was strong, able, active, determined, sober, not easily influenced, and thrifty, and that he never sought to change his will during an interval of more than five years between the date of the execution of the will and that of his death. These facts tend to indicate that the instrument as executed expressed his own desires rather than the overpowering influence of others. See *In re Ganun's Estate*, 174 Mich. 286.

A bank credit report indicates that in 1930 the testator had a net worth of about $308,000. It was shown that he had made gifts and loans to his son of from $25,000 to $50,000. When he executed his will, he wrote a letter to his wife stating that he had given his son about $50,000 in cash during the previous 15 years, and that for 6 or 8 years he had given him $200 a month for "house money and 'whatnot,'" but that he had "never received a return of one penny." This letter recited that it was written to avoid "further trouble with the probate court." Proponent was not present when the letter was written or when the will was executed. Opposed to the statement in the letter is contestant's testimony that he "made partial return" of a $16,000 loan.

The testator died of pneumonia after a brief illness. Contestant asserts, against proponent's vigorous denial, that proponent subjected the testator to unnecessary discomfort while he was dying. This does not furnish any clue to the exertion of influence in the making of a will several years before. It was further shown that when the testator was *in extremis,* he made utterances to the effect that proponent's daughter had come into his room to kill him, and that he said, "Mother, Gilbert and I are coming." Such utterances, added to what might appear to be the

natural injustice of the will, probably had their effect on the jury. Such declarations, standing alone, do not constitute evidence of undue influence, even though they might help us understand the state of mind. *Harring* v. *Allen,* 25 Mich. 505; *Zibble* v. *Zibble,* 131 Mich. 655; *In re Morris' Estate,* 228 Mich. 555; *In re Spinner's Estate,* 248 Mich. 263. "There must be proof of acts of domination." *In re Estate of Reynolds,* 273 Mich. 71.

The burden was on contestants (*In re Reed's Estate,* 273 Mich. 334) to establish that "improper influence was exerted, that it had the effect of overcoming the will of testator." *In re Teller's Estate,* 288 Mich. 193. The subject of what constitutes undue influence was fully discussed in *Re Jackson's Estate,* 220 Mich. 565. We have examined the record with meticulous care and cannot find any evidentiary basis for the conclusion of the jury. Opportunity for the influence there was, but from that fact alone undue influence may not be inferred. *In re Teller's Estate, supra; In re Rowling's Estate,* 291 Mich. 218; *In re Reed's Estate, supra.* Nor does the fact that the testator left nothing to his only son, a man 50 years of age, indicate that the result came about through subversion of the testator's own intentions. *In re Bliss' Estate,* 247 Mich. 389.

The trial court was right in entering judgment notwithstanding the verdict. The evidence of the circumstances does not safely point to the conclusion reached by the jury. It is not the province of the court or jury to substitute their judgment for that of the testator, or to correct a seeming injustice. So long as the testator was of sound mind and expressed his own desires in the instrument, he was at liberty to make whatever disposition he chose. Neither the statute giving the right to direct by will the posthumous disposition of one's property (3 Comp.

Laws 1929, § 13478 [Stat. Ann. § 26.1061]) nor its forebears from the first statute of wills in the year 1540, 32 Henry 8, Chap. 1, has ever been concerned with the wisdom of the direction; for that we are bound to take as conclusive the judgment of the will-maker himself.

The judgment is affirmed, with costs to proponent.

Bushnell, C. J., and Sharpe, Boyles, Chandler, North, McAllister, and Wiest, JJ., concurred.