*In re* KRAMER'S ESTATE.

BAGBY *v.* McCABE.

1. Wills—Undue Influence—Burden of Proof.
   In a will contest the burden of proof to establish undue influence is upon contestant.

2. Same—Undue Influence—Opportunity.
   Opportunity to exercise undue influence does not give rise to the inference that it has been exercised upon testator in making his will.

References for Points in Headnotes
[1] 57 Am. Jur., Wills, § 386.
[1, 2, 7] Presumption and burden of proof as to undue influence on testator. 66 A.L.R. 228; 154 A.L.R. 583.
[2, 11] 57 Am. Jur., Wills, § 387.
[3] 57 Am. Jur., Wills, § 149.
[3] Illustrations of instructions or requested instructions as to effect of unnaturalness or unreasonableness of provisions of will on question of testamentary capacity or undue influence. 137 A.L.R. 989.
[4] 57 Am. Jur., Wills, § 148.
[5] 57 Am. Jur., Wills, § 351.
[7] 57 Am. Jur., Wills, §§ 352, 386.
[8] 57 Am. Jur., Wills, § 352.
[9] 57 Am. Jur., Wills, § 361.
[10] 57 Am. Jur., Wills, § 350.
[10] Distinction between undue influence and fraud as ground for contesting will. 28 A.L.R. 787, 791; 92 A.L.R. 790, 793.
[13] 57 Am Jur., Wills, § 438.
[14] 58 Am. Jur., Witnesses, § 664.

3. SAME—CORRECTION OF SEEMING INJUSTICE.

It is not the province of the court or jury to substitute its judgment for that of the testator or to correct a seeming injustice in a will contest.

4. SAME—MENTAL COMPETENCY.

So long as a testatrix is of sound mind and expresses her own desires in her will, she is at liberty to make whatever disposition she chooses.

5. SAME—UNDUE INFLUENCE.

Undue influence will vitiate a will only when it is sufficient to overcome the free agency of the testator so that the will which results from his intelligent action speaks not the will of the testator himself but of someone else, and there must be proof that the will was obtained by this coercion.

6. SAME—MENTAL COMPETENCY—EVIDENCE.

The fact that the testator disposes of his property in some other way than under the statutes of descent and distribution, instead of indicating a lack of testamentary capacity, indicates the testator knew he had a right to dispose of his property, and availed himself of such statutory right, disposing of his property as he saw fit (4 Comp. Laws 1948, § 702.1 *et seq.*).

7. SAME—UNDUE INFLUENCE—PRESUMPTIONS.

Undue influence cannot be presumed, but must be proved and in connection with the will and not with other things.

8. SAME—UNDUE INFLUENCE.

A will may not be set aside on the ground of undue influence unless such undue influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property.

9. SAME—ADVICE—ARGUMENTS—PERSUASION.

Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion.

10. SAME—UNDUE INFLUENCE.

Undue influence in the making of a will is a species of fraud and, like fraud, must remain undefined by the courts.

11. SAME — UNDUE INFLUENCE — OPPORTUNITY — STATUTES OF DE-
SCENT.

Undue influence cannot be predicated upon opportunity alone,
nor upon a disposition of property not in accord with the
statutes of descent.

12. SAME—MENTAL COMPETENCY—EVIDENCE.

In contest of will and codicil thereto, executed when testatrix
was upwards of 80 years of age, evidence *held*, not to pre-
sent a question for jury's consideration.

13. SAME—UNDUE INFLUENCE—OPPORTUNITY.

Mere opportunity to exert undue influence, standing alone, is
not sufficient to take a case to the jury in a will contest based
on such ground.

14. SAME—CROSS-EXAMINATION—DISCRETION OF COURT.

The latitude permitted on cross-examination of a witness in
a will contest is largely one of discretion on the part of the
trial court.

15. SAME — CROSS-EXAMINATION OF PROPONENT — DISCRETION OF
COURT.

In contest of will, executed by aged testatrix, limitation im-
posed by court upon cross-examination of proponent who
received most of testatrix' large estate as to proponent's
independent wealth by inheritance from her husband and
his uncle, gifts by testatrix and securities held jointly by
proponent and testatrix *held*, not to have amounted to an
abuse of discretion.

Appeal from Oakland; Doty (Frank L.), J. Sub-
mitted April 7, 1949. (Docket No. 30, Calendar No.
44,300.) Decided May 18, 1949.

In the matter of the estate of Emma Kramer, de-
ceased. Hazel M. Bagby presented the last will and
codicil of Emma Kramer for probate. Hazel Eliza-
beth McCabe objected thereto. Will allowed. Con-
testant appealed to probate court. Directed verdict

and judgment for proponent. Contestant appeals. Affirmed.

*Voorhies, Long, Ryan & McNair,* for proponents.

*Fischer, Brown, Sprague, Franklin & Ford* (*David G. Barnett,* of counsel), for contestant.

SHARPE, C. J.   This is a will contest. Emma Kramer died April 14, 1947, at the age of 81 years, leaving an estate valued at approximately $160,000.

On July 16, 1943, Mrs. Kramer executed a will by which she bequeathed $5,000 to her grandson Walker M. Bagby, $5,000 to John K. Bagby, another grandson, $5,000 to Mrs. Hazel Elizabeth McCabe, her granddaughter and also adopted daughter, and the residue to her daughter Mrs. Hazel M. Bagby.

On December 20, 1946, Mrs. Kramer executed a codicil to her will, the pertinent part of which reads as follows:

"I give and bequeath to my granddaughter, MRS. HAZEL ELIZABETH MCCABE, of New York City, New York, who is also my adopted daughter, the sum of $1,000. I make no further provision for said granddaughter and adopted daughter for the reason that she received or will receive the residue of the estate of her mother, my deceased daughter, Mrs. Florence E. Kramer, and at my death will receive a share of the residue of the estate of my deceased husband, Emil J. Kramer, and I feel that she has been sufficiently provided for.

"I so also hereby republish, ratify and reaffirm my said last will and testament in all respects as modified by this first codicil."

The material facts leading up to the issues involved in this case are as follows: Emil J. Kramer and his wife, Emma Kramer, lived in Missouri where Mr. Kramer was associated with the Inter-

national Shoe Company and had accumulated a considerable estate. They had two daughters, Hazel May, born in 1889, and Florence, born in 1887. Mr. and Mrs. Kramer lived in Missouri from about 1896 until 1942, when Mr. Kramer died.

Florence Kramer was married in 1910 to F. M. White. As a result of this marriage one child was born who was named Hazel Elizabeth. The marriage between F. M. White and Florence Kramer did not prove successful and the parties were divorced in 1914. At the time of the dissolution of this marriage an agreement was reached whereby Mr. and Mrs. Kramer agreed to adopt the child which was done on December 3, 1914. The child, Hazel Elizabeth, lived with her adopted parents until 1935 when she married Terrence McCabe. Hazel M. Kramer, the other daughter, married Francis Bagby in 1914 and moved to Michigan where she has since resided.

Mr. Kramer suffered a stroke in 1936 and was never really well after that. For a period of approximately three years prior to his death in 1942, he was more or less helpless physically. Mrs. Kramer was not too well and during this period Florence Kramer attended to the needs of her parents. Following the marriage of Hazel Elizabeth McCabe in 1935, she and her husband lived in various States owing to the fact that Mr. McCabe was employed by the United States Department of Agriculture. It also appears that from early childhood Florence Kramer and her sister Hazel Bagby were not too friendly and this lack of understanding persisted until the time of Florence Kramer's death in 1943.

Within a short period after Mr. Kramer's death, Mr. and Mrs. Bagby took Mrs. Kramer to a St. Louis attorney and had a will drafted, payment for which was partly made by Mr. Bagby. This will

was executed on April 13, 1942, and provided that the residue of Mrs. Kramer's estate should be held in trust for her three daughters. On July 16, 1943, Emma Kramer executed another will in Mr. Carey's office in Detroit in which she bequeathed Hazel Elizabeth McCabe the sum of $5,000 and the residue of her property to her daughter Hazel M. Bagby. On December 20, 1946, Mrs. Kramer executed a codicil to this will as hereinbefore mentioned.

It also appears that in the early part of 1943, Florence journeyed to California and was taken seriously ill. Later she was brought to Iowa where she died on May 29, 1943. A short time after the death of Mr. Kramer, Emma Kramer came to Michigan and lived with her daughter Hazel M. Bagby in the city of Birmingham. Beginning in 1943, while living with her daughter Mrs. Bagby, Mrs. Kramer disposed of a substantial part of her estate by gifts to Mrs. Bagby and partly by transferring securities to the joint names of herself and Mrs. Bagby. Mrs. Kramer also made a joint account of her commercial bank account in a St. Louis bank with Mrs. Bagby and shortly thereafter this bank account was transferred to a Detroit bank.

On April 16, 1947, Mrs. Bagby filed a petition in the probate court of Oakland county for the probate of the will and codicil at issue in this cause.

Hazel Elizabeth McCabe filed objections to the probate of the will for the following reasons:

"1. Said deceased at the time of her death was not domiciled in said county of Oakland.

"2. Said instruments are not said deceased's last will and testament nor a codicil thereto.

"3. Said writings so offered for probate were not signed, published and attested by said deceased in the manner required by the law of this State for the valid execution of wills.

"4. Said writings so offered for probate were not signed, published and attested by said deceased in the manner required by the law of the State of her domicile for the valid execution of wills.

"5. If said instruments were ever executed by said deceased such execution was induced by fraud.

"6. If said instruments were ever executed by said deceased such execution was induced by mistake.

"7. Said deceased was not of sound and disposing mind and memory at the time of the supposed execution of said instruments.

"8. If said instruments were executed by said deceased such execution was induced by undue influence, duress, suggestion and coercion practiced upon said deceased.

"9. Said instruments if they were ever validly executed by said deceased were afterwards revoked."

After a hearing was had the probate court entered an order admitting the will to probate. Contestant appealed to the circuit court of Oakland county with a demand for a jury trial. The cause came on for a hearing in the circuit court on June 15, 1948. At the close of proofs offered by the contestant, a motion was made to direct a verdict in favor of the proponents of the will.

The trial court granted the motion, stating:

"It seems that Emma Kramer made a will in Birmingham or Detroit when living in Birmingham, dated July 16, 1943. She made a codicil to that will, dated December 20, 1946. Emma Kramer died in April 14, 1947. Her will was admitted to the probate court of this county. There was a hearing and a decision and the contestant has appealed it to this court and has asked for a trial by court and jury.

"The proponent, that is the party who wishes to sustain the will, is Mrs. Bagby. The contestant, whose wish it is to have this will declared not the last will and testament of Mrs. Emma Kramer, is

Mrs. McCabe. The will is submitted by the proponent; testimony was taken as to its execution and that established the prima facie case for the proponent. Then the contestant came in and claimed that Emma Kramer, at the time she made the will of July 16, 1943, and the codicil of December 20, 1946, was mentally incompetent, or that her mind was in such a state that she could be easily influenced and, second, that undue influence was used by Mrs. Bagby on Mrs. Kramer to have her leave Mrs. McCabe out of the will practically, reducing her to the sum of $5,000, then to $1,000, where in another will there was something said about all having an equal share. The contestant claims Mrs. Bagby used undue influence.

"The burden of proof is upon the contestant to prove mental incapacity and prove undue influence by a fair preponderance of the evidence. In my opinion mental incapacity is out. These letters all indicate a very keen, philosophical turn of mind on the part of Mrs. Kramer, that she was strong willed and dominated the family, so, she was competent in my opinion upon the dates of July 16, 1943, and December 20, 1946.   *   *   *

"In my opinion the contestant has not established a prima facie case, has not supported the burden of proof and must fail.

"I am directing the verdict in this case that the will of July 16, 1943, and the codicil of December 20, 1946, of Emma Kramer is her last will and testament."

Following the entry of judgment, contestant filed a motion for a new trial giving as her principal reason that:

"The court erred in holding that the testimony offered by contestant in support of the objections to the admission of the will and codicil was insufficient to create any material issue of fact for submission to the jury."

Other grounds relating to the exclusion of testimony were alleged.

In denying the motion for a new trial, the court stated:

"The testimony showed conclusively that the deceased was in full possession of her mental faculties up to the time of her death. She was a strong-willed woman, possessed of good business judgment and handled her own affairs up to the time of her death. She discussed the matter of the will and codicil with her attorney on numerous occasions, and there is no doubt that she was fully cognizant of the nature and extent of her property and the natural objects of her bounty. Contestant had previously received the residue of the estate of her mother, deceased daughter, amounting to approximately $75,000, which, with the share she received from the estate of the deceased's husband, Emil Kramer, of approximately $35,000, together with gifts from Mr. and Mrs. Kramer, made well over $100,000 which she had received from them. Deceased pointed out these facts in both her will and codicil as the reason for not making a larger bequest to contestant.

"None of the witnesses for contestant had seen or been in contact with deceased for several years prior to her death. No testimony was offered by any witness that deceased was not of sound mind. Neither was there any testimony that she was acting under any undue influence at the time the instruments were executed."

Contestant appeals and urges that the evidence, circumstantial and otherwise when considered in the light most favorable to contestant, made out a case of undue influence sufficient to go to the jury. In determining this question we have in mind that the burden of proof to establish undue influence is upon contestant; that opportunity to exercise undue influence does not give rise to the inference that it

has been exercised (*In re Teller's Estate,* 288 Mich. 193; *In re Hannan's Estate,* 315 Mich. 102); and that it is not the province of the court or jury to substitute its judgment for that of the testator, or to correct a seeming injustice. So long as the testator was of sound mind and expressed her own desires in the instrument, she was at liberty to make whatever disposition she chose. See *In re Livingston's Estate,* 295 Mich. 637.

The influence necessary to vitiate a will is well stated in *Re Reed's Estate,* 273 Mich. 334:

"Undue influence will vitiate a will only when it is sufficient to overcome the free agency of the testator so that the will which results from his intelligent action speaks not the will of the testator himself, but of someone else.  *  *  *  The law provides for the making and execution of wills, and how property shall pass under the statutes of descent and distribution in case the testator does not seek to dispose of it by will. The fact the testator disposes of his property in some other way than under the statutes of descent and distribution,* instead of indicating a lack of testamentary capacity, indicates the testator knew he had a right to dispose of his property, and availed himself of the provisions of the statute,† disposing of his property as he saw fit.  *  *  *

"Undue influence to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion. Undue influence cannot be presumed, but must be proved and in connection with the will and not with other things. A will may not be set aside on the ground of undue influence unless such influence

---

* See 4 Comp. Laws 1948, § 702.80 *et seq.;* § 702.93 *et seq.* (Stat. Ann. 1943 Rev. § 27.3178 [150] *et seq.;* § 27.3178 [163] *et seq.*).— REPORTER.

† See 4 Comp. Laws 1948, § 702.1 *et seq.* (Stat. Ann. 1943 Rev. § 22.3178[71] *et seq.*).—REPORTER.

amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property. Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion. Undue influence is a species of fraud and, like fraud, must remain undefined by the courts. All that can be done is to lay down certain general principles, and what is said above embraces those general rules which have been adduced from adjudicated cases. *Maynard* v. *Vinton,* 59 Mich. 139 (60 Am. Rep. 276).   *   *   *

"Undue influence cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent."

In support of her claim of undue influence, contestant urges that there was ill feeling between Hazel Bagby and Florence Kramer; that the McCabes were not invited to the home of Hazel Bagby; that Mrs. Bagby used her influence to prevent contestant from seeing Mrs. Kramer; that when Mrs. Kramer went to the home of Mrs. Bagby, Mrs. Kramer intended to remain there only a short time; that Mrs. Bagby told Mrs. Kramer that contestant was not entitled to as much out of Mrs. Kramer's estate as she (Mrs. Bagby) was; that Mrs. Bagby warned the St. Louis banker to give no information to contestant about Mrs. Kramer's financial matters; that Mrs. Bagby intermeddled in the making of Mrs. Kramer's wills; that the later wills were a departure from the plan of distribution which Mrs. Kramer had adopted while she lived in St. Louis; and that there was an unequal distribution of the estate between Mrs. Bagby and Mrs. McCabe.

We have carefully examined the record and find an abundance of evidence that at the time the will and codicil were made Mrs. Kramer's mental and

physical condition were excellent for a woman of her age. We are in full accord with the statement of the trial court, hereinbefore quoted, when he denied a motion for a new trial. The most that can be said is that there was an opportunity to exert undue influence, but opportunity to exert undue influence, standing alone, is not sufficient to take a case to the jury.

It is also urged that the trial court unduly limited the proofs offered by contestant. This issue grew out of the cross-examination of Mrs. Bagby relative to her independent wealth by inheritance from her husband and his uncle, gifts from testatrix and securities held jointly by Mrs. Bagby and testatrix. The latitude permitted on cross-examination is largely one of discretion on the part of the trial court. We have examined the record and cannot say that the court abused its discretion in the latitude allowed on cross-examination.

The judgment is affirmed and the case remanded to the trial court with direction to enter judgment for proponents sustaining the will, and to remand to the probate court with direction to admit the will to probate. Proponents may recover costs of both courts.

BUSHNELL, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.