*In re* SPRENGER'S ESTATE.

MANCANI *v.* SPRENGER.

1. WILLS—TESTAMENTARY CAPACITY.

Testamentary capacity of an individual exists when he is able to comprehend the nature and extent of his property, can recall the natural objects of his bounty and determines and understands the disposition of property which he desires to make.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 57 Am Jur, Wills § 64.
[2] 57 Am Jur, Wills §§ 89, 90.
[3] 57 Am Jur, Wills § 56.
[4, 17] 57 Am Jur, Wills § 110.
[5] 57 Am Jur, Wills §§ 398, 407.
[6] 57 Am Jur, Wills § 351.
[7, 9] 57 Am Jur, Wills, §§ 386, 387.
[8] 57 Am Jur, Wills § 352.
[10] 57 Am Jur, Wills § 369.
[11, 12] 14 Am Jur, Courts §§ 59, 60.
[14, 16, 18, 19, 21] 57 Am Jur, Wills § 104.
[15] 30 Am Jur, Judgments § 174.
[20] 57 Am Jur, Wills § 902.
[22] 57 Am Jur, Wills § 924.
[23] 57 Am Jur, Wills § 133.
[24] 57 Am Jur, Wills § 139.

2. Same—Mental Competency—Burden of Proof.
   The burden is upon a contestant to establish mental incompetency of deceased at the time the proposed will was drawn.

3. Same—Mental Competency—Illiteracy.
   Illiteracy or lack of education has little, if any, bearing upon mental capacity to make a will.

4. Same—Mental Competency—Appointment of Guardian.
   The appointment of a guardian to protect the property of a person does not constitute probative evidence of mental incompetency.

5. Same—Lack of Wisdom—Lack of Fairness—Weakness of Mind—Forgetfulness.
   Lack of wisdom in the disposition of property, lack of fairness in the provisions of a will, weakness of mind of the testator and forgetfulness are insufficient of themselves to invalidate a will.

6. Same—Undue Influence.
   Undue influence exercised upon one who executes a will may vitiate it if that influence took from the testator his right freely to exercise his discretion in disposing of his property.

7. Same—Undue Influence—Evidence—Opportunity.
   Undue influence is not to be presumed but must be proved by the person seeking to have the will declared invalid and cannot be found in the desire of some person to influence the testator nor in the fact that the opportunity existed for the exercise of such influence.

8. Same—Undue Influence.
   Undue influence exercised in connection with the will and not with other things must be proved by party contesting its validity on that ground.

9. Same—Undue Influence—Disposition of Property—Statutes of Descent.
   Undue influence cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent.

10. Same—Misrepresentations—Undue Influence.
    Misrepresentations made for the purpose of influencing the testator may constitute undue influence if it is shown that the testator relied upon such misrepresentations in the disposition of his property.

11. COURTS—STARE DECISIS.

The rule of *stare decisis* has reference to principles or points of law and not to factual situations existent in cases where such principles apply.

12. SAME—PRECEDENTS.

It is a general maxim that when a point has been settled by decision, it forms a precedent which is not afterwards to be departed from.

13. SAME—PROTECTION OF PERSONS UNABLE TO PROTECT THEMSELVES —MENTAL CAPACITY.

Principle that a court of equity should protect those persons unable to protect themselves and applied in a particular case is not to be used in determining whether or not the persons protected had testamentary capacity.

14. EVIDENCE—MENTAL COMPETENCY—FORMER LITIGATION.

Records and files of former litigation in which deceased testator was a party is not determinative of his mental capacity to make a will, an issue raised in will contest but not involved in former litigation.

15. JUDGMENT—RES JUDICATA—PARTIES—ISSUES.

Decision in former litigation is not *res judicata* of issue involved in will contest, where neither the parties nor the issues are identical.

16. WILLS—MENTAL COMPETENCY—EVIDENCE—FORMER LITIGATION— REMOTENESS.

Records and files of litigation relating to events in the life of testator some years prior to the execution of will contested on grounds of mental incompetency were inadmissible in will contest because too remote to be of value on such issue.

17. SAME—MENTAL COMPETENCY—RES JUDICATA.

The fact that there had been a judicial determination that testator needed protection in the management of his affairs does not constitute probative evidence that he was mentally incompetent to make a will nor preclude him from disposing of his property by such means.

18. SAME—MENTAL COMPETENCY—POWER OF ATTORNEY—ASSISTANCE IN BUSINESS AFFAIRS.

Execution of unlimited power of attorney by illiterate, uneducated testator some 9 days after he had become acquainted with the person who was given such power and 7 days before executing proposed will, *held*, to have constituted mere assistance in the management of business matters which did not

indicate a lack of testamentary capacity on the part of the testator, hence, refusal to admit such power · of attorney in evidence was not error on part of trial judge who did not regard it as material to the issues at the time it was offered.

19. SAME—MENTAL COMPETENCY—REMOTE EVIDENCE—SUBSEQUENT EVENTS.

Exclusion of testimony with reference to the sale and distribution of proceeds of some of deceased's property about 3 years after the execution of the contested will was neither arbitrary nor unreasonable on the part of the trial judge, since it related to a period of time so remote as to make it of little probative value on issue of mental competency of deceased.

20. SAME—JUGGLING OF FUNDS OF DECEASED—EVIDENCE.

Claim, but not proof, of juggling funds of deceased, did not warrant inquiry into the matter by trial judge and precluded contestants in will contest from complaining of action by trial judge in not pursuing such matter, where contestants failed to subpoena records or produce witnesses to show improper acts of proponents within a' reasonable period of time after execution of will and record shows no proof of actual mishandling of funds.

21. SAME—MENTAL COMPETENCY—UNDUE INFLUENCE—EVIDENCE.

Admission of exhibits showing deposits and withdrawals of bank deposits during 5-year period between execution of will and death of testator for purposes of impeaching a witness but held irrelevant to the issues of mental incompetency and undue influence and too remote in time to execution of the will *held,* proper in view of the fact that no evidence was offered of actual mishandling of deceased's funds within a reasonable period of time before or after execution of the .will, such records disclosing at most only the opportunity for misapplication of funds.

22. SAME — MENTAL COMPETENCY — UNDUE INFLUENCE — HARMLESS ERROR.

Erroneous statement by trial judge in his findings in will contest that spinster sister of deceased testator had made the same disposition of her property that deceased had in his will *held,* not reversible error, since the provisions of her will were of no import in determining whether testator had mental capacity to execute his will or was subjected to undue influence in executing it.

23. Same — Mental Competency — Undue Influence — Great Weight of Evidence.

Findings of the trial court in will contest that testator was mentally competent to execute his will and had not been subjected to undue influence in its making *held*, not against the great weight of the evidence, where, although there was competent evidence on the issue, the record does not indicate that the weight favored the contestants on such issues.

24. Same—Disposition of Property to Surviving Sister.

Unmarried testator's will of his entire property to his spinster sister who survived him and excluding children of a deceased brother *held*, a natural and normal thing to do in view of the fact that the brother and sister had spent their entire life working together on a farm and the brother and his children had engaged testator in considerable trouble and litigation during testator's lifetime.

Appeal from Macomb; Noe (Alton H.), J. Submitted January 8, 1953. (Docket No. 41, Calendar No. 45,542.) Decided October 5, 1953.

In the matter of the estate of Michael Sprenger, deceased. Michael Mancani and others presented the will of Michael Sprenger for probate. Leonard Sprenger, Jr., and others contested. Contest certified to circuit court. Judgment allowing probate. Contestants appeal. Affirmed.

*Gaeton Urbani, John W. Fistler* and *John H. Yoe,* for proponents.

*Ernest Wunsch, Bruno L. Blinstrub* and *Bert V. Nunneley,* for contestants.

ADAMS, J. This is an appeal from a judgment of the circuit court of Macomb county admitting to probate as the last will and testament of Michael Sprenger, deceased, an instrument dated April 16, 1945.

Michael Sprenger, a resident of Macomb county, died on January 21, 1950, at the age of 86 years, leaving as his heirs at law a sister and several nieces and nephews. Elizabeth Sprenger, the sister, and the children of Mary Sprenger Miller, deceased sister of the testator, are joined with Michael Mancani, executor named in the contested instrument, as proponents of the will. The contestants and appellants are the children of Leonard Sprenger, deceased brother of the testator. With the exception of Michael Mancani, proponents and contestants constitute all the heirs at law of Michael Sprenger, deceased.

Michael Sprenger was born on a farm in Macomb county and spent all of his life there. His sister, Elizabeth, lived with him. Both were unmarried. He was an extremely frugal man, had little education and his sole occupation was farming.

The 2 were the survivors of an original family of 6 brothers and sisters. Through inheritance they owned a substantial interest in several parcels of real estate in Macomb county. Despite their property holdings, they lived without modern conveniences in an old and poorly kept house. Prior to 1945 the real estate had been managed and supervised by their brother, Leonard, and by a trust company. In the course of such supervision, differences arose between members of the Sprenger family which led to litigation. One dispute arising out of the execution of a trust agreement reached this Court on appeal (*Sprenger* v. *Sprenger,* 298 Mich 551). Following that litigation, Michael Sprenger was sued in Wayne county on a claim for attorney's fees for services in the appeal matter. During the course of the 2 disputes, which extended over a number of years, animosity and bitterness developed between Michael Sprenger and his brother, Leonard.

On April 1, 1945, Michael Sprenger first met Michael Mancani, a distant relative through marriage. He was apparently impressed with Mancani and almost immediately developed great confidence in him. Nine days after their first meeting, he gave Mr. Mancani an unlimited power of attorney to manage his affairs and shortly thereafterwards discharged the Equitable Trust Company which was then handling the properties, as well as certain attorneys who were representing him and the trust company.

On April 16th he executed the will which is the subject of this litigation and which had been drafted by an attorney suggested by Mancani. In the will he gave his entire estate to his sister, Elizabeth, if she survived him. In the event she predeceased him, then the estate went to the children of his deceased sister, Mary. His stated reason for failure to make provision for the children of the deceased brother, Leonard, was "that they have caused considerable trouble and litigation during my life." Following the execution of the will and during the remaining 5 years of his life, Michael Sprenger and his sister, Elizabeth, apparently relied almost exclusively upon Mancani in the management of their properties.

In contesting the admission of the will to probate, contestants claimed, first, that deceased was not of sound mind and did not have testamentary capacity at the time the instrument was executed and, second, that the instrument was procured through the undue influence of Elizabeth Sprenger and others.

The trial court found that the deceased did have testamentary capacity as of the date of the instrument, that the terms of the instrument were not affected by undue influence, and that it was his last will and testament. Contestants moved for a new trial alleging that there were numerous errors in

the conduct of the trial and that the judgment was against the overwhelming weight of the evidence. That motion was denied.

On appeal to this Court contestants set forth in their reasons and grounds of appeal some 43 assignments of error. Summarized, it remains the position of the contestants that the judgment was against the great weight of the evidence and that many errors were committed in the court's rulings on admission of testimony.

To have testamentary capacity, an individual must be able to comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make. *In re Walker's Estate,* 270 Mich 33. The burden is upon the person questioning the competency of the deceased to establish that incompetency existed at the time the will was drawn. *In re Hallitt's Estate,* 324 Mich 654.

Illiteracy or lack of education has little, if any, bearing upon mental capacity to make a will and the appointment of a guardian to protect the property of a person does not constitute probative evidence of mental incompetency. *In re Cummins' Estate,* 271 Mich 215. Nor should the lack of wisdom in the disposition of the property nor the fairness of the provisions of the will influence the court in a determination of mental competency. *In re Livingston's Estate,* 295 Mich 637. Weakness of mind and forgetfulness are likewise insufficient of themselves to invalidate a will. *Schneider* v. *Vosburgh,* 143 Mich 476.

"Undue influence" exercised upon one who executes a will may become the basis for finding the will invalid if that influence took from the testator his right to freely exercise his discretion in disposing

of his property. Such influence is not to be presumed but must be proved by the person seeking to have the will declared invalid and cannot be found in the desire of some person or persons to influence the testator nor in the fact that the opportunity existed for the exercise of such influence. It exists as a matter of law only where the influence is actually exerted and amounts to a constraint depriving the testator of his free agency.

" 'Undue influence to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion. Undue influence cannot be presumed, but must be proved and in connection with the will and not with other things. A will may not be set aside on the ground of undue influence unless such influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property. Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion. Undue influence is a species of fraud and, like fraud, must remain undefined by the courts. All that can be done is to lay down certain general principles, and what is said above embraces those general rules which have been adduced from adjudicated cases. *Maynard* v. *Vinton,* 59 Mich 139 (60 Am Rep 276). * * *

" 'Undue influence cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent.' " *In re Reed's Estate,* 273 Mich 334, as quoted with approval in *Re Hannan's Estate,* 315 Mich 102, 124.

Misrepresentations made for the purpose of influencing the testator may constitute undue influence if it is shown that the testator relied upon such mis-

representations in the disposition of his property. *In re Barth's Estate,* 298 Mich 388.

Contestants claim that the records and files in the case of *Sprenger* v. *Sprenger, supra,* and in the subsequent litigation in Wayne county involving attorney fees for services rendered in the appeal, should have been admitted in the record of this case as competent testimony showing the mental condition of the deceased. *Sprenger* v. *Sprenger* was an action to set aside a trust agreement and certain conveyances between Leonard Sprenger, now deceased, and Michael and Elizabeth Sprenger. In the majority opinion this Court said that Michael Sprenger was an uneducated, inexperienced and ignorant man; an easy and tempting victim of improper influence of misrepresentation and a person who needed protection against "designing relatives or outsiders." We did not find him mentally incompetent. The Court set aside the trust agreement and the conveyances, stating:

" 'The equitable rule is of universal application that where a person is not equal to protecting himself in the particular case, the court will protect him.' *Connelly* v. *Fisher,* 3 Tenn Ch 382." *Sprenger* v. *Sprenger, supra.*

Contestants say that such a determination is *stare decisis* of the question of decedent's mental capacity. We cannot agree with the contestants for the reason that the rule of *stare decisis* has reference to principles or points of law and not to factual situations existent in cases where such principles apply.

"It is a general maxim that when a point has been settled by decision, it forms a precedent which is not afterwards to be departed from." 2 Bouvier's Law Dictionary (Rawle's 1897 Rev), p 1028.

The principle or point of law laid down by this Court in *Sprenger* v. *Sprenger* is that a court of equity should protect those persons unable to protect themselves. That principle was applied to the facts and issues found to exist in the particular case reviewed but it should not be used in determining testamentary capacity.

Nor is the decision in *Sprenger* v. *Sprenger res judicata* of the issue here involved as claimed by the contestants. Neither the parties nor the issues are identical.

"We are of the opinion that the trial court did not err in its ruling. It appears that the former suit was not between the same parties or their representatives in interest. It does not appear that the issue or subject matter was the same, and this is essential to the admissibility of the testimony. 2 Wigmore on Evidence, §§ 1386, 1387 and 1388." *Eesley Light & Power Co.* v. *Commonwealth Power Co.*, 172 Mich 78.

Two further reasons exist justifying the court's refusal to admit in evidence the records and files of the 2 earlier law suits. Both cases were related to events in the life of Michael Sprenger that occurred some years prior to the execution of his will and are too remote in time to be of value in determining the issues here involved.

"The sole question here under consideration is the mental competence of the testator at the time the will was executed. The admissibility of testimony regarding subsequent events is solely within the discretion of the trial court. No definite time interval can be determined for all cases, as each must be governed by its own situation. The ruling of the trial judge was neither arbitrary nor unwarranted in the light of the facts presented. The mere fact, standing alone, that the testator was declared incompetent 18 months later does not of itself prove

that he lacked sufficient mental powers to execute the will in question." *In re Nickel's Estate,* 321 Mich 519.

Further, the Court did not hold that Michael Sprenger lacked testamentary capacity in 1937. We did find that because of his weaknesses he needed protection in the management of his affairs. Such weakness would not preclude him from disposing of his property by will.

"In 1928 a guardian was appointed for the estate, but not for the person of testatrix, evidently to forestall possibility of mercenary intentions of a suitor for her hand. Such guardianship did not prevent testatrix from making a will or constitute probative evidence of her mental incompetency." *In re Cummins' Estate, supra.*

We are of the opinion that the trial judge properly excluded the records and files of the earlier litigation.

Contestants further say that the power of attorney executed by Michael Sprenger some 7 days prior to the execution of the will should have been admitted into evidence. It is their claim that the testator's grant of an unlimited power of attorney giving complete domination of his property to a person with whom he had been acquainted for only 9 days was evidence of testamentary incapacity which, when considered with other evidence, would have conclusively proved such incompetence. The trial judge heard testimony as to the time of the execution of the power of attorney but refused to admit the instrument itself in evidence on the ground that as of the time offered, its provisions did not appear to be material to the issues. He indicated, however, that he would again consider its admissibility if further testimony was offered tending to show it to be material. Insofar as the record in-

dicates, no further effort was made to have it admitted and we agree with the trial court that as of the time of the ruling, the contents of the power of attorney were not relevant to the issue of testamentary capacity. Assistance in the management of business matters does not indicate lack of testamentary capacity. *In re Cummins' Estate, supra.* The execution of the power of attorney was discussed freely during the trial and a record of the provisions of the power would be of no value in determining the matter at issue.

Contestants further say that it was error for the court to exclude testimony in reference to the sale and distribution of proceeds of some of decedent's property made almost 3 years after the execution of the will. Such testimony related to events at a time so remote from the date of the execution of the will as to make it of little probative value and its exclusion by the trial judge was neither arbitrary nor unreasonable. *In re Nickel's Estate, supra.*

Contestants claim that there was some juggling of Michael Sprenger's financial accounts sometime after the execution of the will and that the court should have made further inquiry into that matter. Contestants, however, cannot criticize the court for their own failure to subpoena records or produce witnesses if there was available evidence indicating improper acts by the proponents within a reasonable period of the time after the will was executed. The record shows no proof of actual mishandling of funds.

A large number of exhibits were offered by contestants showing deposits and withdrawals of bank deposits during the 5-year period between the execution of the will and the death of the testator. Most of the transactions occurred some years after the execution of the will.

The records were rejected by the court as being both irrelevant to the issues and too remote in time to the execution of the will. They were admitted, however, for the impeachment of testimony of certain witnesses, particularly Elizabeth Sprenger.

We think the ruling of the trial court was proper in view of the fact that no evidence was offered of actual mishandling of Michael Sprenger's funds within a reasonable period of time before or after the execution of the will. At most, the bank records disclosed only the opportunity for misapplication.

Contestants further claim that the court erred in his findings of fact by stating therein certain happenings, proof of which had been excluded at the trial. An examination of the record indicates that the court's findings were based upon testimony offered at the trial with but one exception, that being his statement that the will of Elizabeth Sprenger disposed of the remainder of her property to the same persons named in the testator's will. While that finding was not justified from the record, there can be no reversible error in view of the fact that the provisions of Elizabeth Sprenger's will were of no import in determining Michael Sprenger's mental capacity or the exercise of undue influence upon him.

Contestants claim that, in addition to the alleged errors by the court in the admission of testimony, the judgment was against the great weight of the evidence. With this position we cannot agree.

The record shows that a qualified and experienced psychiatrist examined Michael Sprenger some 4 months before the execution of the will and found him mentally competent. The family physician who had known and treated Michael Sprenger for many years both before and after the execution of the will stated that in his opinion he was mentally competent to make the will on April 16, 1945. Neighbors, acquaintances and witnesses to the will likewise

testified to facts indicating mental competency. Their testimony indicated that while he was old, feeble, illiterate and lacking in business experience, he nevertheless knew the extent of his property, the names of his relatives and the nature of the disposition of his property. One witness testified that the original draft of the will was changed at the testator's demand in order to more accurately express his wish. On the other hand, contestants submitted competent testimony indicating a lack of testamentary capacity. With the witnesses before him, the court was in a position to evaluate the testimony of both proponents and contestants. He found proponents' testimony more convincing. The burden was upon contestants to show such incapacity at the time the will was signed. *In re Hallitt's Estate,* *supra.* It does not appear from the record that the weight of the evidence favored contestants on the issue of testamentary incapacity.

Likewise on the question of undue influence, competent evidence was produced indicating the opportunity to exercise such influence. Other testimony was offered from which a reasonable inference could be drawn that such influence was actually exerted.

On the other hand, leaving his entire property to his surviving sister was a natural and normal thing for the testator to do in view of the fact that the brother and sister had spent their entire life working together on the farm.

"Considering the sons' misconduct and their mistreatment of their mother, and considering the fact that Marjorie had devoted many years of her life to assisting and caring for her mother, it cannot be said that the will was unreasonable or unnatural. In the case of *In re Cottrell's Estate,* 235 Mich 627, 631, 632, we stated: 'The will was not an unnatural one. Proponent had practically given her life's work

to her father; she had been a dutiful daughter.' "
*In re Hannan's Estate,* 315 Mich 102, 126.

Further, excluding the children of Leonard Sprenger as legatees is understandable in view of testator's explanation in the will that they had caused him considerable trouble and litigation during his life, a fact that is borne out by the record. During an extended period prior to the execution of the will, disputes and litigation had existed between the deceased and the Leonard Sprenger family.

The record discloses no evidence of misrepresentation or improper influence that had the effect of overcoming the will of the testator. The disposition of his property was a natural and normal one in view of the circumstances and events shown in the record.

We are of the opinion that the judgment of the trial court was not contrary to the great weight of the evidence.

The judgment is affirmed, costs to appellees.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.